In the Matter of DORIS HUTCHINS, Respondent, against JOSEPH D. MCGOLDRICK, as State Rent Administrator, Appellant.

In the Matter of PHILIP W. RANSOM, Appellant, against JOSEPH D. MCGOLDRICK, as State Rent Administrator, Respondent.

Argued March 1, 1954; decided May 20, 1954.

*Emory Gardiner* and *Robert H. Schaffer* for appellant in first above-entitled proceeding. I. The administrator's order finding that failure to create self-contained apartments bars decontrol is in full accord with the intent and meaning of the statute. (*Matter of Paikoff* v. *McGoldrick,* 280 App. Div. 996; *Matter of Chatlos* v. *McGoldrick,* 302 N. Y. 380; *Matter of Ransom* v. *McGoldrick,* 282 App. Div. 566; *United States* v. *American Trucking Assns.,* 310 U. S. 534; *Surace* v. *Danna,* 248 N. Y. 18.) II. Issuance of the final order and mailing thereof to petitioner precluded the institution of a proceeding to review that order thirty days thereafter. (*Matter of R. E. Associates* v. *McGoldrick,* 278 App. Div. 347; *News Syndicate Co.* v. *Gatti Paper Stock Corp.,* 256 N. Y. 211.)

*James R. Ulsh* for appellant in second above-entitled proceeding. I. The premises in question are exempt from and not subject to control under the Sate Residential Rent Law. (*Allen* v. *Stevens,* 161 N. Y. 122; *Matter of City of Rochester* v. *Public Service Comm.,* 275 App. Div. 172, 301 N. Y. 801; *Neumann* v. *City of New York,* 137 App. Div. 55; *Westchester Co. S. P. C. A.* v. *Mengel,* 266 App. Div. 151, 292 N. Y. 121; *Thompson* v. *Wallin,* 276 App. Div. 463, 301 N. Y. 476.) II. The order of the administrator annulled by the court below was arbitrary and capricious, in excess of his jurisdiction, and was the result of prejudice and bias. (*Flynn* v. *Woods,* 181 F. 2d 867; *Matter of Federal Tel. & Radio Corp.* [*Corsi*], 301 N. Y. 95; *Packer Collegiate Inst.* v. *University of State of N. Y.,* 298 N. Y. 184; *Matter of Levine* v. *O'Connell,* 275 App. Div. 217, 300 N. Y. 658; *Matter of Small* v.

*Moss,* 279 N. Y. 288; *Panama Refining Co.* v. *Ryan,* 293 U. S. 388; *United States* v. *Grimaud,* 220 U. S. 506; *Schechter Corp.* v. *United States,* 295 U. S. 495.)

*S. Gerald Duckor* and *Charles L. Kellar* for respondent in first above-entitled proceeding. I. The intent and meaning of the statutes in question is clear and unambiguous. (*Fowler* v. *Buffalo & Jamestown R. R. Co.,* Sheld. 525; *City of New York* v. *Whitridge,* 227 N. Y. 180; *Newell Universal Mill Co.* v. *Muxlow,* 115 N. Y. 170; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Woodbury,* 208 N. Y. 421; *People* v. *Long Is. R. R. Co.,* 194 N. Y. 130; *Lawrence Constr. Corp.* v. *State of New York,* 293 N. Y. 634; *Town of Putnam Valley* v. *Slutzky,* 283 N. Y. 334; *People* v. *Gitlow,* 195 App. Div. 773, 234 N. Y. 132; *Meltzer* v. *Koenigsberg,* 302 N. Y. 523; *Matter of Ransom* v. *McGoldrick,* 282 App. Div. 566.) II. Petitioner was timely in instituting her proceeding to review the orders in question. (*Anthony* v. *Schofield,* 265 App. Div. 423; *Matter of Spanierman* v. *Crescent Plaza Corp.,* 270 App. Div. 885.)

*Emory Gardiner* and *Robert H. Schaffer* for respondent in second above-entitled proceeding. The administrator's order finding that failure to create the new units through substantial structural alteration barred decontrol is in full accord with the intent and meaning of the statute. (*Matter of Paikoff* v. *McGoldrick,* 280 App. Div. 996; *Woods* v. *MacNeil Bros. Co.,* 80 F. Supp. 920; *Thierry* v. *Gilbert,* 147 F. 2d 603; *Woods* v. *Dodge,* 170 F. 2d 761; *Matter of Chatlos* v. *McGoldrick,* 302 N. Y. 680; *United States* v. *American Trucking Assns.,* 310 U. S. 534; *Surace* v. *Danna,* 248 N. Y. 18.)

LEWIS, Ch. J. The double caption which prefaces this opinion entitles two rent law cases which were argued together and present the following question: Were conversions made between February 1, 1947, and May 1, 1950 — resulting in additional housing accommodations — decontrolled by the State Residential Rent Law (L. 1946, ch. 274, as amd. by L. 1950, ch. 250).

In the first proceeding captioned above — an article 78 proceeding instituted by the petitioner-respondent Hutchins against the State Rent Administrator — the appeal, by our permission, is by the Rent Administrator from an Appellate Division order

which unanimously affirmed an order of Special Term setting aside orders of the Rent Administrator determining that converted apartments, owned by the petitioner and converted *after* February 1, 1947, but *before* May 1, 1950, were subject to rent control, and fixing maximum rentals therefor.

Briefly, as to facts: In November, 1949, the petitioner Hutchins became the owner of a one-family dwelling of sixteen rooms located at 171 New York Avenue in Brooklyn. At that time the building was "boarded up." Thereafter, and prior to May 1, 1950, alterations were made which resulted in the creation of ten separate dwelling units of two or three rooms each. However, except as to one apartment, none of the new units included a private bathroom. It is not disputed that the alterations which resulted in the creation of the new units were structural changes, substantial in character; that such alterations resulted in additional housing units and were completed between February 1, 1947, and May 1, 1950. Between those two dates there had developed in urban districts of the State a critical shortage of housing accommodations amounting to a public emergency which led to the intervention of Federal, State and local governments and the adoption of measures to curb and control mounting housing rentals. Among remedial measures enacted by the Legislature — prompted in part by a purpose to promote the creating of additional housing accommodations — was the State Residential Rent Law (as amd. by L. 1950, ch. 250) which, by the exclusory provisions of section 2 (subd. 2, pars. [a]–[g] inclusive), served to exclude — and thus to decontrol — certain types of housing from the definition of "Housing accommodation."

The problem presented by the *Hutchins* proceeding requires us to determine whether the new additional rental units, created by the conversion of the Hutchins property and accomplished between February 1, 1947, and May 1, 1950, were decontrolled by section 2 (subd. 2, par. [g], cl. [2]) of the statute last mentioned above. That clause of the statute prescribes that among types of property excluded from the definition of "Housing accommodation" — and thus decontrolled — are: "additional housing accommodations created by conversion on or after February first, nineteen hundred forty-seven * * *."

After thus excluding from rent control housing accommodations resulting from "conversion" which took place on or after February 1, 1947, there follows immediately in the text of the statute the provision that as to additional housing units created by conversion *after* the effective date of the enactment — May 1, 1950 — certain requirements in addition to "conversion" shall be fulfilled. To that end the continuing text prescribes: "* * * *provided, however,* that any housing accommodations resulting from any conversion created on or after the effective date of this act (May 1, 1950) shall continue to be subject to rent control as provided for herein unless the commission issues an order decontrolling them which it shall do *if the conversion resulted in additional, self-contained family units as defined by regulations issued by the commission.*" (Emphasis and parenthetical insertion supplied.)*

Indicative of the Legislature's intent to differentiate factors incident to "conversion" which effected decontrol before May 1, 1950, from those factors which served to bring about decontrol after May 1, 1950, is the following amendment to the same statute — enacted by the Legislature in 1951 (§ 2, subd. 2, par. [g], cl. [2], as amd. by L. 1951, ch. 443) — which provides that the following accommodations shall not be subject to rent control: "* * * (2) additional housing accommodations created by conversion on or after February first, nineteen hundred forty-seven; provided, however, that any housing accommodations *created as a result of* any conversion *of housing accommodations* on or after *May first, nineteen hundred fifty,* shall continue to be subject to rent control as provided for herein unless the commission issues an order decontrolling them which it shall do if *there has been a structural change involving substantial alterations or remodeling; and such change has* resulted in additional *housing accommodations consisting of* self-contained family units as defined by regulations issued by the commission * * *.*" (New and rephrased matter emphasized.)

* State Rent and Eviction Regulations, § 11, define "self-contained family unit" as "a housing accommodation with private access, containing one or more rooms in addition to a kitchen (including kitchenette or pullman kitchen) and a private bathroom."

The statute of 1951 — like its immediate predecessor — thus clearly distinguishes between conversions made prior to May 1, 1950, and those made thereafter. As to conversions made prior to 1950 — such as the conversion of the petitioner Hutchins' property — freedom from rent control was not a privilege; it was a statutory right. In that connection it will be noted that the 1951 Legislature made no change in the provision governing conversions made between 1947 and 1950 which we now review. It did no more than amplify the requirements which a building converted *after* May 1, 1950, must meet before it may be decontrolled. Thus, as to the period *prior* to May 1, 1950, all that is required before the new accommodations are decontrolled is that additional housing accommodations be created by conversion. However, as to conversions effected under the 1951 act after May 1, 1950, in addition to requirements referred to above which prevail as to pre-1950 conversions, the following elements are necessary: (1) proof of structural change, involving (2) substantial alteration or remodeling, which create (3) self-contained family units and, lastly, an order of the commission decontrolling the accommodations.

For this conclusion we find support in the State Rent and Eviction Regulations promulgated by the Temporary State Housing Rent Commission. Under section 9 of those regulations — the caption of which is *" Housing accommodations not subject to rent control "* — it is provided by subdivision 5 that the rent regulations contained therein shall not apply to " Additional housing accommodations created by conversion, consisting of a structural change in housing accommodations involving substantial alterations and remodeling, on or after February 1, 1947 and prior to May 1, 1950." Nothing in that regulation contains the further requirement that the rental unit — to be decontrolled — must also be a self-contained family unit, i.e., contain a private bathroom. It is also significant that section 11 of the regulations, bearing the title *" Conversions after May 1, 1950 "*, is the regulation which defines a " self-contained family unit ", thus indicating that even the commission understood that term to apply only to conversions after May 1, 1950.

The further fact should be noted, however, that the references in the regulation last quoted above to " structural change "

and " substantial alterations and remodeling " have no place in regulations concerning the period between 1947 and 1950, because — as we have seen — those words were not in the 1950 statute (L. 1950, ch. 250); they were inserted into the 1951 statute (L. 1951, ch. 443) only as to housing converted *after* May 1, 1950. It is significant in this connection that the original regulation (§ 9) read as follows: " *Housing accommodations not subject to rent control.* * * * 5. Additional housing accommodations created by conversion on or after February 1, 1947, and prior to May 1, 1950 * * *." It will be noted that the original regulation conformed to the wording and content of the statute, and did not contain the disputed words.

The administrator, as appellant before us, asserts that the conversion of the Hutchins property was completed at a time early in 1950 when Federal rent control laws governed. It is argued that by the standards prescribed in the Federal laws the housing units here involved could not have qualified for decontrol, the claim of the administrator being that it is unreasonable to assume the Legislature intended thus to reward housing which failed to meet the minimum standards of the only two statutes which govern the conversion. Concerning what the administrator suggests are " the only two statutes which govern ", it appears that as to one of those statutes — the Federal law — we are not here concerned; and the State law — complete in itself — makes no reference to the Federal act in this connection which would prompt us to look in that direction for aid in our search for indications of legislative intent. Turning then to the State legislation, we have seen that it clearly indicates that the requirements for structural change, for substantial alteration and for " self-contained family units " apply only to housing accommodations converted *after* May 1, 1950. The State legislation is equally clear that, as to conversions which occurred after February 1, 1947, and *prior* to May 1, 1950, the only requirement for decontrol is that there be " additional housing accommodations created by conversion ".

Subdivision (c) of section 36 of the State Rent and Eviction Regulations provides that where, as in the present case, no registration statement has been filed as required by those regulations or by the Federal act, the administrator, upon written

request of either party or on his own initiative, may at any time issue an order fixing a maximum rent. The administrator implies that this is a blanket authorization to him to fix maximum rentals in all cases where no registration has been filed, whether or not the premises are decontrolled. As the Appellate Division has noted herein (282 App. Div. 945, 946), this would make the regulations inconsistent with the statute, which authorizes decontrol of certain premises. However that may be, section 9 of the regulations — as we have seen — clearly states that " These Regulations shall not apply to  *  *  * Additional housing accommodations created by conversion  *  *  * on or after February 1, 1947 and prior to May 1, 1950." Thus it would seem that subdivision (c) of section 36 of the State Rent and Eviction Regulations does not apply to the present case in any event.

The administrator further contends that the petitioner herein did not commence this proceeding to review the administrator's order within thirty days after the issuance thereof as required by the State Residential Rent Law (§ 9; L. 1951, ch. 443). In support of that position the administrator argues that the provisions for commencing a review of the administrator's order do not prescribe that a copy of the order must be received by the parties in order to make effective the period of limitation. Such an interpretation might mean that if the administrator made a determination and failed within thirty days to give notice thereof, a review of such determination could be precluded as untimely. Such we think is not the law (see *Matter of R. E. Associates* v. *McGoldrick*, 278 App. Div. 347, 348). As to whether notice of the administrator's determination herein was mailed to or received by the petitioner, the finding of fact made at Special Term and affirmed at the Appellate Division — to the effect that the notice was either not mailed or not received — is conclusive upon us.

Accordingly, in the *Hutchins* proceeding, we conclude that under provisions of the State Residential Rent Law, it is clear that the additional housing accommodations created by conversion on or after February 1, 1947, and before May 1, 1950, were decontrolled.

Passing then to the *Ransom* proceeding, in which the petitioner has taken an appeal as of right from an order of the Appellate Division which reversed — two Justices dissenting — an order of Special Term holding that the administrator exceeded his jurisdiction in fixing a maximum rent for the petitioner's premises: The *Ransom* proceeding differs from the foregoing (*Hutchins*) proceeding in that in *Ransom* the administrator contends there was no structural change involving substantial alterations, and therefore the premises thus converted were not decontrolled. It is not disputed — and this is significant — that an additional housing accommodation was created as a result of conversion, albeit the alteration involved only minor changes to create the additional accommodation.

The statute enacted by the Legislature (L. 1950, ch. 250, as amd.) — as was disclosed in the *Hutchins* case — provides simply, as to conversions created between the appropriate dates in 1947 and 1950, that "additional housing accommodations created by conversion * * *" shall be decontrolled. The *only* statutory test is whether, between the crucial dates, any additional accommodations were created by conversion. In our view there is no doubt that the present case meets these requirements. That the conversion was easily established is not a bar to decontrol under the standard set by the Legislature. Requirements such as "structural change", "substantial alteration" and "self-contained family unit" apply only to conversions effected after May 1, 1950, and we are not concerned therewith upon these appeals.

The conclusion thus reached by us in the *Ransom* proceeding is in accord with the view expressed by the minority in the Appellate Division and by the Justice at Special Term (282 App. Div. 566, 569).

In *Matter of Hutchins* v. *McGoldrick,* the order of the Appellate Division should be affirmed, with costs.

In *Matter of Ransom* v. *McGoldrick,* the order of the Appellate Division should be reversed and the determination of the Temporary State Housing Rent Commission annulled, with costs in this court and in the Appellate Division.

CONWAY, J. (dissenting). In these two cases we are called upon to ascertain the intention of our Legislature when it enacted the State Residential Rent Law (L. 1946, ch. 274, as amd.). The history of Federal and State rent control, as well as the Legislature's expression of intent, shed a clear light thereon.

We consider first the Federal rent control laws.

In section 201 (subd. [b]) of the Federal Housing and Rent Act of 1947 (U. S. Code [Supp. I], tit. 50, Appendix, § 1891, subd. [b]), Congress declared that it recognized the existence of an emergency and that, for the prevention of inflation and for the achievement of a reasonable stability in the general level of rents during the period of return to a peacetime economy, as well as the attainment of other salutary objectives, it was necessary for a limited time to impose certain restrictions upon rents charged for rental housing accommodations in defense-rental areas.

Section 202 of the 1947 act was entitled " Definitions ". In subdivision (c) of that section Congress defined " controlled housing accommodations " to mean " housing accommodations in any defense-rental area ". It then went on to say in paragraph (3) of subdivision (c) that the term did *not* include: " any housing accommodations (A) the construction of which was completed on or after February 1, 1947, or which are additional housing accommodations created by conversion on or after February 1, 1947 * * *." (U. S. Code [Supp. I], tit. 50, Appendix, § 1892, subd. [c], par. [3].)

On April 1, 1949, by the Housing and Rent Act of 1949 (63 U. S. Stat. 18), Congress made amendments to the Housing and Rent Act of 1947. Among others, was an amendment to paragraph (3) of subdivision (c) of section 202. Thus paragraph (3), quoted *supra* in part, was stricken out and the following inserted in its place and the section numbered 201: " (3) any housing accommodations (A) the construction of which was completed on or after February 1, 1947, or which are housing accommodations created by a change from a nonhousing to a housing use on or after February 1, 1947, or which are additional housing accommodations created by conversion on or after February 1, 1947. *Provided, however,* that any housing accom-

modations resulting from any conversion created on or after the effective date of the Housing and Rent Act of 1949 [April 1, 1949] shall continue to be controlled housing accommodations unless the Housing Expediter issues an order decontrolling them, which he shall issue if he finds that the conversion resulted in additional, *self-contained family units* as defined by regulations issued by him * * *." (U. S. Code [Supp. III, Vol. 2], tit. 50, Appendix, § 1892, subd. [c], par. [3]; second emphasis supplied.)

The Controlled Housing Rent Regulation prescribed that decontrolled housing shall include (§ 825.21, subd. [b], par. [2], subpar. [vi], cl. [b]) (Friedlander and Curreri, Rent Control [1950 Supp.], p. 93):

" * * * (b) Housing accommodations as to which a decontrol order has been entered by the Housing Expediter based on a conversion created on or after April 1, 1949 * * *. On petition by the owner such a decontrol order shall be entered by the Housing Expediter, if the following facts are established:

" (1) There has been a structural change in a residential unit or units involving substantial alterations or remodeling; and

" (2) Such change has resulted in additional, self-contained family units. For the purposes of this § 825.21 (b) (2) (vi):

"The term ' self-contained family unit ' means a housing accommodation with private access, containing one or more rooms in addition to a kitchen (including kitchenette or pullman kitchen) and a private bathroom: *Provided, however,* That where a housing accommodation meets all these conditions except that it has no private bathroom or no bathroom facilities other than toilet, the Area Rent Director may waive such requirement if he finds that the accommodation is of the type recognized as a self-contained family unit in the neighborhood in which it is located."

So it will be seen, that from April 1, 1949, on, decontrol of additional housing accommodations could be brought about only by obtaining an order from the Federal Housing Expediter, and, as a condition to receiving such an order, the landlord was required to show (a) that there had been a structural change involving substantial alterations or remodeling, and (b) that the change had resulted in additional self-contained family

units, i.e., units having private access, containing one or more rooms in addition to a kitchen and a private bathroom unless that latter was specifically waived by the area rent director.

The alterations in the *Hutchins* case, as a result of which additional housing accommodations were created, were completed in March of 1950, while the afore-mentioned Federal rent control law and regulations governed. The building was a one-family dwelling, containing sixteen rooms. Alterations were made resulting in the creation of ten separate housing units, of two or three rooms each, almost all of which contained a living room, a bedroom, and some cooking space. With the exception of one apartment, none had a private bathroom or toilet within the apartment. All shared common sanitary facilities located in the hallways. No decontrol order was obtained under the Federal act of 1949 and regulations and no decontrol order was obtainable under such statute and regulations because of the absence of individual bathrooms. With that in mind we turn to the State rent control law.

On March 31, 1950, pursuant to the provisions of the Federal Housing and Rent Act of 1949, the Governor of this State notified the Federal Housing Expediter that the State had provided for its own rent controls and requested the discontinuance of Federal controls as of May 1, 1950. Accordingly, the Housing Expediter issued a proclamation declaring that Federal rent controls would come to an end in New York State at midnight, April 30, 1950, and that State controls would become effective immediately thereafter. (See McKinney's Cons. Laws of N. Y., Book 65, Part 2 [1953 ed.], p. 789.) Thus, there was no lapse of time between the end of Federal rent control and the beginning of State rent control.

What was the intention of the Legislature when it enacted the New York State Residential Rent Law? In subdivision 1 of section 14, which is entitled " *Intent* ", the Legislature expressly declared: " 1. It is the intention of this act to subject to control only those housing accommodations, as that term is defined herein, *which were subject to rent control* and for which a maximum rent was in effect on March first, nineteen hundred fifty pursuant to federal or local laws, and in the discretion of the commission those housing accommodations for which a maxi-

mum rent was thereafter established, pursuant to the provisions of section four hereof.'' (Emphasis supplied.)

And, in subdivision 1 of section 4, the act states that: `` * * * the commission shall establish maximum rents which shall be (a) for housing accommodations outside the city of New York, the maximum rent which was established on March first, nineteen hundred fifty pursuant to the federal act * * *; and (b) for housing accommodations within the city of New York, the maximum rent which was established on March first, nineteen hundred fifty pursuant to the federal act * * *.''

It is evident from the statement of legislative intent and from section 4 quoted, that the Legislature intended that the State rent control law, which took effect the instant the Federal rent control law ended, was to continue State control for those accommodations which were subject to rent control under the Federal law. We do not perceive any valid reason for assuming that the State intended to decontrol automatically any of the properties theretofore subject to Federal rent control laws, and, none is advanced. To conclude that the Legislature intended to reward owners of housing units which failed to meet the minimum standards in effect under the Federal law, by decontrolling such units automatically, is to ignore the Legislature's expressed intent to continue to control those housing accommodations which were subject to rent control under the Federal law. As we have noted, the Hutchins property was subject to control under the Federal law.

There is no dispute as to the fact that, as to additional accommodations created after the effective date of the State rent control law, May 1, 1950, the same elements required under the preceding Federal act as a condition precedent to the issuance of a decontrol order were in force. That is:

(1) there must have been a structural change,

(2) involving substantial alterations or remodeling

(3) additional accommodations must have resulted, each of which is a self-contained family unit. (State Residential Rent Law, § 2, subd. 2, par. [g], cl. [2].)

Petitioners' argument that additional housing accommodations created during the period that the Federal act of 1949 was in force were automatically decontrolled by the State rent

control law is based upon a construction which they place upon section 2 (subd. 2, par. [g], cl. [2]) of the State Residential Rent Law.

It is quite evident, when one lays the State and Federal rent control laws side by side, that the draftsman of the State law was following the pattern and ofttimes the exact language of the Federal law and intended to maintain the standards laid down by the Federal statute. Thus, section 2 of the State rent control law, like section 202 of the 1947 Federal rent control law and section 201 of the 1949 act, deals with " Definitions " and just as section 202 of the 1947 Federal law and section 201 of the 1949 Federal law declared that enumerated structures, such as hotels and motor courts, were not subject to rent control, so that State statute lists in section 2 (subd. 2, pars. [a] — [i], as amd. by L. 1953, chs. 320, 321) *numerous* structures not subject to rent control. Clause (2) of paragraph (g) of subdivision 2 of section 2 is the one with which we are concerned. It reads: " (2) additional housing accommodations created by conversion on or after February first, nineteen hundred forty-seven; provided, however, that any housing accommodations created as a result of any conversion of housing accommodations on or after May first, nineteen hundred fifty, shall continue to be subject to rent control as provided for herein unless the commission issues an order decontrolling them which it shall do if there has been a structural change involving substantial alterations or remodeling; and such change has resulted in additional housing accommodations consisting of self-contained family units as defined by regulations issued by the commission; provided further, however, that such order of decontrol shall not apply to that portion of the original housing accommodation occupied by a tenant in possession at the time of the conversion but only so long as that tenant continues in occupancy."

The State Rent Commission's definition by section 11 of the State Rent and Eviction Regulations of " self-contained family unit " is *identical* with the regulation (§ 825.81, subd. [b], par. [2], subpar. [vii], cl. [b]) of the Federal Housing Expediter, viz., " a housing accommodation with private access, containing

one or more rooms in addition to a kitchen (including kitchenette or pullman kitchen) and a private bathroom ''.

The petitioners argue that section 2 (subd. 2, par. [g], cl. [2]) differentiates between additional housing accommodations created by conversion before May 1, 1950 — the effective date of the State act — and those created thereafter; that as to those created between February 1, 1947, and May 1, 1950, decontrol was automatic if they were created by '' conversion '' but that as to those created after May 1, 1950, there must be a showing, in addition to '' conversion '' of:

(1) a structural change,

(2) involving substantial alterations or remodeling

(3) additional accommodations must have resulted each of which is a self-contained family unit.

We think it clear that section 2 (subd. 2, par. [g], cl. [2]) may not be thus read; it may not be read as a solitary unit apart from its very subordinate setting in section 2. To properly understand its significance in the scheme of the State rent control law we must carry in the forefront of our minds the history of Federal and State rent control and the legislative intent as expressed in section 14 of the State act and fortified in section 4 thereof. With those matters in proper perspective, the term '' conversion '' appearing in the first portion of clause (2) of paragraph (g) includes within its meaning the elements of (1) structural change, (2) involving substantial alterations or remodeling, and (3) resulting in additional self-contained family units. The State statute does not contain a definition of the word '' conversion ''. However, at the time the State rent control law became effective, a conversion which would bring about a decontrol order under the Federal law of 1949 — the statute in effect when the creation of the additional accommodations herein took place — had to result in '' additional, self-contained family units ''. The Legislature was aware of that fact. Had it intended to establish a new policy or definition of that word it would have expressly so stated. Instead, in its declaration of intent, it expressed its will to continue State rent control for those units which were subject to antecedent Federal rent control, and the property involved here was sub-

ject to Federal rent control. The term " conversion " as applied to newly created housing accommodations at that time (May 1, 1950) had a meaning under the Federal Act of 1949 which encompassed " self-containment " and our Legislature did not undertake to give the term a different meaning. On the contrary, it gave it the identical meaning by statute and regulation.

Doubtless it is within the power of the lawmakers to enact an unreasonable law and the courts cannot revise such a statute to harmonize it with their conception of reason. However, the intent to enact such a statute is never presumed and before the court will conclude that the Legislature has done that, such intent must appear clearly and in unmistakable terms (see McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 143). No such intent appears here.

Decontrol was conceived in an effort to create additional housing in order more directly to achieve the legislative objective, i.e., of alleviating the serious shortage of residential housing. But it was not the State legislative intent, as we perceive it, to accomplish that by means of *substandard housing accommodations,* when the Federal Act of 1949 had been careful to insure the contrary. Minimum standards were prescribed by the Federal Act of 1949 if one were to obtain the benefits of decontrol.

Accordingly, in the *Hutchins* case the orders of the Appellate Division and of the Special Term should be reversed and the proceeding dismissed.

Turning now to *Matter of Ransom:* The alterations took place in July of 1949, and so our reasoning in the *Hutchins* case applies and the premises are not subject to decontrol unless petitioners can show, in addition to the creation of additional housing accommodations that there was

(1) a structural change,

(2) involving substantial alterations or remodeling, and

(3) that the additional accommodations are self-contained family units.

The order of the Rent Administrator fixing a maximum rent is based in terms only on the fact that the alteration made was not substantial. However, he also urges, in his brief, that the upstairs apartment is not self-contained for the reason that it

does not have a kitchen. Since the administrator did not base his determination on such ground and there is not sufficient evidence in the record to enable us to ascertain whether it is the fact, we would reverse and remand the matter to the commission for the taking of evidence on that subject. Petitioner also claims that evidence offered by him bearing on the question of whether the alteration was substantial was rejected and not considered by the commission. Accordingly, the commission should also give further consideration to that matter.

The matter should be remitted to the commission for action not inconsistent with this opinion.

As to the *Hutchins* appeal: DESMOND, DYE, FULD and FROESSEL, JJ., concur with LEWIS, Ch. J.; CONWAY, J., dissents in opinion in which VAN VOORHIS, J., concurs.

Order affirmed.

As to the *Ransom* appeal: DESMOND, DYE, FULD and FROESSEL, JJ., concur with LEWIS, Ch. J.; CONWAY, J., dissents in opinion in which VAN VOORHIS, J., concurs.

Order reversed, etc.