In the Matter of Vivana Realty Corporation, Respondent, against Charles Abrams, as State Rent Administrator, Appellant.

First Department, March 25, 1958.

*Beatrice Shainswit* of counsel (*Nathan Heller*, attorney), for appellant.

*Joseph A. Giordano* of counsel (*Nicholas H. Pinto*, attorney), for respondent.

BREITEL, J. P. The State Rent Administrator, in an article 78 proceeding, appeals from an order at Special Term annulling his determination that a rooming house located at 36 West 116th Street, Manhattan, was subject to rent control. Primarily involved is the question whether, between February 1, 1947 and May 1, 1950, certain units in this one-time apartment house had been converted into additional housing accommodations, within the meaning of the statute, and were, therefore, exempt from controls.

The order should be reversed and the proceeding remanded to the Rent Commission to take further action in accordance with the conclusions expressed herein.

The premises are a former 10-unit apartment house located in a deteriorated area. It has been owned by several successive corporations, in each of which, however, the principal was one Michael Lichtman. Material to the case is that Mr. Lichtman is also a general contractor, who claims to have done some of the alleged conversion in this building, using his own men and material. In two different proceedings that arose before the Rent Commission, initiated by complaints with respect to particular accommodations in this building, landlord has asserted different theories as the ground for decontrol, or exemption from control.

Earlier, namely in December, 1953, landlord, or a predecessor corporation, had claimed that the entire building had been substantially reconstructed as a hotel during the years 1950 to 1952, after a fire in 1949 had destroyed practically all of the interior of the building. Thereafter, in March, 1954, it claimed that the basic reconstruction of the building occurred, following virtual destruction by fire in 1951. At this time it characterized the 1949 fire as a small fire. More recently, it has claimed that the building had become decontrolled between 1947 and 1950 as a result of alterations made in the building, in part by the landlord and, in part, by tenants.

In connection with the first two statements that the building had been reconstructed, it was asserted that the building had been reconverted from an apartment house into a hotel. When the Rent Commission determined that, under its regulations, the building did not qualify as a hotel, landlord shifted ground and claimed exemption from control, based upon conversion between 1947 and 1950.[*] In support of its several positions landlord relied, with one exception, upon the affidavits of Mr. Lichtman and the affidavit of the superintendent of the building, one Caleb Roker. The one exception is to various records of the Federal Office of the Housing Expediter which, landlord contended, establish decontrol of at least a part of the building, if not all, during the period 1947–1950.

The record of the proceedings before the Rent Commission establishes that both landlord and the commission staff became quite impatient with one another in the effort to ascertain the historical facts with regard to the building. Landlord's shifting theories in support of its claims for decontrol, or exemption from control, were significant factors. Adding to the difficulties were claims that there were three separate fires in the building;

---

[*] This followed shortly after the Court of Appeals determined the *Hutchins-Ransom* case (307 N. Y. 78, *infra*) which for the first time made it clear that such a ground might be available.

one in 1949, another in March, 1951, and another in September, 1951. Still further complicating the situation was the allegedly piece-meal conversion of apartments from 1947 to 1950 by the landlord and his tenants. These conversions were unsupported by any vouchers for labor or materials. Since landlord's principal was a general contractor, it attributed the absence of records to the fact that Mr. Lichtman had done much of the work. On the other hand, landlord claimed that it had made major alterations, financed by proceeds of fire insurance policies, but at no time did it voucher these assertions and, of course, the alterations no longer exist, because of the alleged intervening fires. At the same time, the Rent Commission was unable to locate the Federal records when landlord asserted his claim to exemption based on a 1947–1950 conversion.

Making still more difficult the problem of bringing any order out of this chaos was the fact that, although the building now consists uniformly of furnished rooms similarly constructed and arranged, it may well be that, because of matters that will be later adverted to, only part of the building is subject to decontrol, or exempt from control. In the last stage of the proceedings before the Rent Commission that agency made a general determination that because of the shifting theories and varying assertions of fact, landlord's proof was entitled to no credit and that, therefore, its affidavits and that of its superintendent would be disregarded. Consequently, it held the entire premises subject to control. Special Term, in annulling the determination, found that landlord was entitled to rely on different theories to sustain its position and that the commission was not entitled, out of hand, to reject the "uncontradicted" evidence submitted by landlord.

True, the Administrator is not bound to accept the bare assertions of landlord in a situation such as this. (*Matter of Asco Equities* v. *McGoldrick,* 285 App. Div. 381, 385, affd. 309 N. Y. 738.) On the other hand, it is not free to reject proof merely because it may question it (cf. *Hull* v. *Littauer,* 162 N. Y. 569; *St. Andrassy* v. *Mooney,* 262 N. Y. 368). In order to reject evidence as discredited there must be some support for the rejection in the record. Obviously, this support need not be directly contravening proof.

Actually, in this case there is no question that landlord contradicted itself on a number of occasions. On the other hand, the proceeding involved such a melange of facts, going back so many years, that a certain amount of contradiction was not surprising. On the view, however, that is taken of this pro-

ceeding, it is not necessary or desirable to decide now whether the Administrator is entitled to discredit entirely landlord's position or not. It is sufficient that the case be remanded, since neither landlord nor the Rent Commission has sufficiently assumed the onerous burdens involved in developing the essential facts to determine the ground, or absence of ground, for decontrol, or exemption from control.

Some of the records of the Federal Office of Housing Expediter have been located since the determination at Special Term. These records suggest decontrol of at least three of the original apartments in this building. With regard to the other apartments, there is greater confusion. The mere fact that the landlord asserts that some of its tenants, between 1947 and 1950, converted their apartments and sublet rooms is hardly sufficient. Certainly, subletting alone would not constitute the creation of additional housing accommodations. Nor would it seem that any simple alteration, no matter how slight, ought to qualify as the creation of additional housing accommodations by conversion. This brings one to a discussion of the statute, and to the construction of the statute in *Matter of Hutchins* v. *McGoldrick*; *Matter of Ransom* v. *McGoldrick* (307 N. Y. 78).

Under Federal rent controls decontrol was possible if a landlord created additional housing accommodations by conversion.* When the State statute was adopted (and in this respect made more specific in 1950) provision was made with reference to such Federal decontrol. (State Residential Rent Law [L. 1946, ch. 274], § 4, subd. 2; and later [as amd. by L. 1950, ch. 250], § 2, subd. 2, par. [g], cl. [2].) The statute in this regard has remained unchanged (ibid. [as amd. by L. 1957, ch. 755], § 2, subd. 2, par. [g], cl. [2]).

Unfortunately, the way the State statute was phrased, any additional housing accommodations, created as a result of any conversion between February 1, 1947 and May 1, 1950, were exempted from control without limitation on the nature of the conversion. This contrasted with conversions made after May 1, 1950, where decontrol results only if there has been a structural change involving substantial alterations or remodeling and the commission issues an order decontrolling it. In the *Hutchins-Ransom* case the Court of Appeals held, as a con-

---

* Federal Housing and Rent Act of 1947, § 202, subd. (c), par. (3); U. S. Code, tit. 50, Appendix, § 1892, subd. (c), par. (3); but see Federal Housing and Rent Act of 1949, § 201, subd. (c); U. S. Code, tit. 50, Appendix, § 1892, subd. (c), par. (3), qualifying the extent of alteration necessary to effect the statutory conversion.

sequence, that conversions between 1947 and 1950 were entitled to exemption even though there were no structural changes or substantial alterations. But, in so holding, it did not equate conversion with mere use of existing housing accommodations by more persons than had used them before. The alterations might be minor and that would be sufficient. But there is nothing in the case which suggests that conversion involves merely a change in use. On the contrary, the sense of the case is that conversion still implies some sort of physical change, even though those changes need not meet the test of the statute as to the period after May 1, 1950, or of the regulations adopted by the commission pursuant to the statute.

As a consequence, landlord has a particular burden in this case if it is to obtain decontrol, or establish exemption from control, of the former apartments in the building. It is not sufficient that tenants sublet rooms in their apartments; nor that trivial physical rearrangements were made in order to accommodate the old apartments for roomers. On the other hand, it is quite clear under the holding of the *Hutchins-Ransom* case that landlord is not obliged to establish structural changes involving substantial alterations. Conversion has some significance between these extremes, and, in the first instance, it is for the administrative agency to work out any formulation that it may be advised, within the statutory limitations. (State Residential Rent Law, § 4.)

Because of the state of the record and the confusion as to the effect, in this matter, of the holding in the *Hutchins-Ransom* case, the proceeding should be remanded to the Rent Commission for the taking of appropriate action. In such proceedings as may ensue, landlord is obliged to support its position by more than mere assertions and, painful as it may be, both the commission and landlord will have the obligation of reconstructing the proof with regard to what happened in the building between 1947 and 1950. The effect of the several fires, the use of proceeds from fire insurance on this building, and any proof available with regard to what happened to apartments altered by landlord or otherwise between 1947 and 1950, will be relevant. With sufficient probing the commission will then be on a better basis for determining what credit or discredit landlord's contentions merit, and whether landlord has sustained its burden of proof.

Accordingly, the order annulling the determination of the Rent Commission should be reversed, as a matter of law, and in the exercise of discretion, the proceedings should be remanded

to the Rent Commission for the taking of further action as may be appropriate in this proceeding. Under the circumstances, neither party is entitled to the costs and disbursements of this appeal.

RABIN, FRANK, McNALLY and STEVENS, JJ., concur.

Order annulling the determination of the Rent Commission unanimously reversed, as a matter of law, and in the exercise of discretion, the proceedings are remanded to the Rent Commission for the taking of further action as may be appropriate in this proceeding. Under the circumstances, neither party is entitled to the costs and disbursements of this appeal.

Settle order.