Arthur Wachtel, J.
The lessor relies on subdivision 5 of section 9 of the State Bent and Eviction Begulations and contends that the premises in question were decontrolled, in that additional accommodations were created by conversion between February 1, 1947 and May 1, 1950. The testimony is not sufficient to sustain the landlord’s contention. The lessor, Walter Mark, claims he leases from the owner, Mrs. Ottley, since 1948 and sublet to the tenant in 1957. Mrs. Ottley purchased the building in 1948, and testified she made three separate apartments on each floor; that it was a one-family house vacant when she purchased it. The tenant claims she leases from Mrs. Ottley, *217 not Mark. In any event, a registration for a rooming house in effect since March 1, 1943 has never been revoked. There must be specific proof as to the conversion claimed and when it actually was completed and whether, in fact, additional housing accommodations have been created. (Matter of Hutchins v. McGoldrick, 307 N. Y. 78; Matter of Ransom v. McGoldrick, 307 N. Y. 78; Matter of Vivana Realty Corp. v. Abrams, 5 A D 2d 466.)
In the Hutchins case (supra) it was not disputed that the alterations did result in additional housing units and were completed between February 1, 1947 and May 1, 1950. The Court of Appeals pointed out that as a result of the statutory amendments of 1951 as to the period prior to May 1, 1950, all that is required before the new accommodations are decontrolled is that additional housing accommodations be created by conversion. However, as to conversions effective under the 1951 act after May 1, 1950, in addition to these requirements the following elements are necessary: “ (1) proof of structural change, involving (2) substantial alteration or remodeling, which create (3) self-contained family units and, lastly, an order of the commission decontrolling the accommodations ” (p. 85). However, the Court of Appeals specifically stated (p. 88): “ The only statutory test ” (as to conversion created between 1947 and 1950) “is whether, between the crucial dates, any additional accommodations were created by conversion.”
In the Matter of Vivana Realty Corp. (supra) the landlord claimed on the basis of affidavits by himself and the superintendent that a rooming house resulted from conversion between 1947 and 1950. The Administrator held that the rooming house still remained under control because the landlord had failed to submit satisfactory proof. The lower court reversed, holding that the Administrator was compelled to accept the landlord’s statements, since the Administrator had no contrary evidence. The Appellate Division, First Department, reversed the lower court and remanded the entire case to the Administrator for reconsideration. The court indicated that the Administrator could reject the landlord’s statements, so long as there was support for the rejection in the record. Still, the court felt that the facts in this case required further examination, particularly since certain records had been discovered subsequent to the article 78 proceeding which shed some light on the matter. The court also stated that if the Administrator found that the changes actually did occur between 1947 and 1950, the landlord would still have to establish that there was something more than *218 a mere change in use, to come within the Ransom case. Some physical change is necessary, the Appellate Division pointed out, not merely a subletting by tenants or trivial physical rearrangements.
As Mr. Justice Breitel said in the Vivana case (pp. 470-471):
‘ ‘ In the Hutchins-Ransom case the Court of Appeals held, as a consequence, that conversions between 1947 and 1950 were entitled to exemption even though there were no structural changes or substantial alterations. But, in so holding, it did not equate conversion with mere use of existing housing accommodations by more persons than had used them before. The alterations might be minor and that would be sufficient. But there is nothing in the case which suggests that conversion involves merely a change in use. On the contrary, the sense of the case is that conversion still implies some sort of physical change, even though those changes need not meet the test of the statute as to the period after May 1, 1950, or of the regulations adopted by the commission pursuant to the statute.
“As a consequence, landlord has a particular burden in this case if it is to obtain decontrol, or establish exemption from control, of the former apartments in the building. It is not sufficient that tenants sublet rooms in their apartments; nor that trivial physical rearrangements were made in order to accommodate the old apartments for roomers. On the other hand, it is quite clear under the holding of the Hutchins-Ransom case that landlord is not obliged to establish structural changes involving substantial alterations. Conversion has some significance between these extremes, and, in the first instance, it is for the administrative agency to work out any formulation that it may be advised, within the statutory limitations. (State Residential Rent Law, § 4.) ”
In the Matter of Hutchins (supra) the property, before it was boarded up, consisted of a one-family dwelling. As a result of alterations made before May 1, 1950, 10 dwelling units were created. As Mr. Justice Streit said in Matter of Weiner v. Weaver (10 Misc 2d 643, 644): “This increase in dwelling units may well be what the court had in mind when it said (p. 83): * It is not disputed * * # that such alterations resulted in additional housing units ’ ’ \
However, in the case at bar, there is no proof that the housing accommodations after the owner took over the building were greater than the number which existed before (cf. cases of conversion after a building is boarded up, considered in Matter of Weiner v. Weaver, supra). There is no sufficient proof that “ additional ” accommodations have been created by *219 the alleged conversion. In the words of Judge Conway (now Ch. J.) in his dissenting opinion in Matter of Hutchins (307 N. Y. 78, 95): “ Decontrol was conceived in an effort to create additional housing in order more directly to achieve the legislative objective, i.e., of alleviating the serious shortage of residential housing.”
In the case at bar, the registration indicates that prior to 1947 there was a rooming house with 10 rooming accommodations. The present owner of the building claims that as a result of the alterations she made, there are three apartments on each of the three floors; that she, herself, now occupies the first floor of six rooms and that the second floor contains two complete apartments consisting of one room occupied by Walter Mark, and another apartment of two and a half rooms which the owner claims is also rented to Walter Mark and, in turn, sublet by him to the tenant Eunice Treadwell. The third floor is occupied by Mrs. Moore. The tenant Eunice Treadwell denies these contentions and testified that she originally occupied one room on the second floor; that Mark occupied one room; that then she occupied the two and a half rooms on the second floor and leased these rooms directly from the owner, Mrs. Ottley, not from Mark.
At any rate, the entire case clearly presents a matter for further investigation by the Rent Commission, in accordance with the opinion of the Appellate Division in the case of Matter of Vivana Realty Corp. (5 A D 2d 466, supra).
The petition erroneously states that the rent demanded herein is no greater than the maximum rent prescribed by the New York State Emergency Housing Rent Commission. Lawyers have generally utilized printed forms of petitions such as the one involved, without scrutinizing allegations as to rent control contained in these printed forms. Then, when the case comes on for trial, they seek to eliminate these statements, even though they are sworn to and verified. Such allegation is not a mere irregularity; it strikes at the very heart of the landlord’s case. The landlord seeks to hold the tenant to the strict construction of the rent regulations but, on the other hand, asks for extreme latitude on the part of the court in the interpretation of his own allegations with respect to the Rent Control Law. This procedure should not be encouraged. However, the court does not confine itself to this portion of the case.
Accordingly, petition dismissed without prejudice to a proceeding before the Rent Commission to determine the question of decontrol.
Counterclaim dismissed without prejudice.