Louis R. Glantz, J.
This is a summary proceeding brought by the landlord to recover possession of the upper apartment of the two-family dwelling located at 411 Magnolia Boulevard in the city of Long Beach, county of Nassau, State of New York, on the ground that same became decontrolled pursuant to chapter 685 of the Laws of 1955, which decontrols one-family houses, whether or not occupied by the owner, and two-family houses, if owner occupied in whole or in part on and after July 1, 1955, situated in certain specified counties, including Nassau County.
The rent administrator contends that the aforesaid building is a three-family house, and after this proceeding was commenced in this court, reduced the monthly rent on November 28, 1955 from $125 to $82.50 per month effective as of October 1, 1952.
The State Residential Rent Law (§2, subd. 2, par. [j], as amd. by L. 1955, ch. 685) provides as follows: “ (j) housing accommodations (not otherwise exempt or excluded from control) in two family houses occupied in whole or in part by the owner thereof, and in one family houses whether or not so occupied, on and after July first, nineteen hundred and fifty-five, in the counties of Monroe, Nassau, Oneida, Onondaga and Schenectady, provided, however, that this exemption shall remain effective only so long as the housing accommodations are not rented for other than single family occupancy, and provided further, however, that this exemption shall become or remain effective in any city or town within the counties of Monroe, Oneida, Onondaga or Schenectady subject to the provisions of subdivision four of section twelve hereof providing for the continuance or reestablishment of controls with respect to such housing accommodations therein.”
*1056 The rent- administrator further contends that his determination of the character of the aforesaid building and his opinion as to the aforesaid law is binding and conclusive upon this court and therefore this court lacks jurisdiction to hear and determine the issues herein. He urges that if the landlord feels aggrieved the landlord may bring a certiorari proceeding pursuant to article 78 of the Civil Practice Act to review the determination of the rent administrator.
With such contentions, I entirely disagree. While great weight and consideration should be given by the courts to his interpretation of his own regulations, which the Legislature empowered him to make for the proper conduct of his office and the administration of the emergency housing rent laws, yet he does not make the law. The Legislature enacts the law and he must follow the law.
Opinions rendered by the Attorney-General and by the Comptroller of the State of New York or by any other administrative board or authority are likewise respected by the courts but are not binding and conclusive upon the courts.
In Matter of Singer v. McGoldrick (102 N. Y. S. 2d 665, 667) the court says: “ Though the respondent has a right to make regulations carrying into effect the law already enacted, no authority is vested in the Administrator to make regulations or laws which are not in harmony with the statute ”.
In Whitmarsh v. Farnell (273 App. Div. 584, 588, revd. on other grounds 298 N. Y. 336) the court says: “ The commission [Rent Commission] has power not to make law, but to make regulations carrying into effect the law already enacted. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a nullity.” (Emphasis supplied.)
In Matter of Barry v. O’Connell (303 N. Y. 46, 52) the Court of Appeals says: “ It is for the courts, not for administrative boards, to determine what action is within, or without the law. * * * ‘ Laws are made by the law-making power, and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be ”
In Matter of Hutchins v. McGoldrick (307 N. Y. 78, 85) the Court of Appeals says: ‘‘ freedom from rent control was not a privilege; it was a statutory right. ’’
In Matter of Lo Presti v. McGoldrick (284 App. Div. 827, 828, affd. 308 N. Y. 706) which involved the interpretation of a provision of the State Residential Rent Law that “ housing-accommodations created by a change from a nonhousing to a housing use on or after February first, nineteen hundred forty-seven *1057 ’’ shall be decontrolled, the court unanimously held as follows: ‘‘ The sole statutory requirement is that the additional housing accommodations be created by such a change of use. The subject premises meet that requirement, and are thus beyond the jurisdiction of the State Bent Administrator.” (Emphasis supplied.)
At this point it must be borne in mind that the State Residential Rent Law is penal in its nature and is in derogation of the landlord’s common-law rights and must be strictly construed.
It is also to be noted that in part, the purposes o‘f the housing rent law are to provide for a “ transition from regulation to a normal market of free bargaining between landlord and tenant.” (State Residential Rent Law, § 1.)
From the above citations it is manifest and clear that not only have I the right but it is my duty to determine the application of the statute to the facts herein.
The statute provides that housing accommodations in two-family houses occupied in whole or in part by the owner on and after July 1, 1955 are decontrolled. The Legislature intended to decontrol legal two-family houses and not illegal three-family houses, if occupied as aforesaid. The words “ on and after ’ ’ are adverbs denoting the time when the housing accommodations become decontrolled. If a two-family house is occupied in whole or in part by the owner on July 1, 1955 it is automatically decontrolled. If it is so occupied by any new owner after July 1, 1955 it is likewise decontrolled. The words “ on and after ” for the purposes of the proper interpretation of this statute have the same meaning as “ on or after ”.
The expression “ occupied in whole or in part by the owner ” in my opinion does not require that the owner occupy one entire apartment of the two-family house. The requirements of the statute are satisfied if the owner occupies any part of the premises.
Judge Fuld in Kauffman & Sons Saddlery Co. v. Miller (298 N. Y. 38, 44) says: “Where the language of a statute is susceptible of two constructions, the courts will adopt that which avoids injustice, hardship, constitutional doubts or other objectionable results.” (See, also, East v. Brooklyn Heights R. R. Co., 195 N. Y. 409, 412; People v. Ryan, 274 N. Y. 149; Seltzer v. City of Yonkers, 286 App. Div. 557.)
Upon the trial of this proceeding the following pertinent facts were established:
1. During the depths and despair of the worst depression that ever struck the city of Long Beach and the country at large and when real estate values were distressed and at their *1058 lowest level in the city of Long Beach, Lawyers Trust Company of 111 Broadway, New York City, the then owner of the aforesaid two-family house apparently by foreclosure of a mortgage, rented the entire building consisting of 13 rooms divided into two separate apartments to one John Pellops at $75 per month without heat, hot water, gas, electricity etc. and so registered the same.
2. In 1945 while real estate values in the city of Long Beach were still distressed the entire house was leased to one George Balabus at the same rental of $75 per month. The said George Balabus through witness George A. L. Duffy, a real estate broker, rented the furnished apartment now occupied by the tenant herein to one Leon Levy for the summer season of June 1, 1945 to September 30, 1945 (four months) for the sum of $800. The certificate of registration states that said apartment was furnished at a cost of approximately $1,000. At this point it is to he noted that Long Beach is a seashore resort and that housing accommodations which are customarily rented for the summer season commencing June 1 and ending September 30 are exempt from control. Such seasonal rentals require no heat to be supplied by the landlord.
3. In July, 1950 the witness, Else Lefevre and her husband purchased the aforesaid two-family dwelling and at the closing of title, made, executed and delivered to Lawrence Cedarhurst Federal Savings & Loan Assn, a self-liquidating purchase-money mortgage in the sum of $14,000 payable in monthly installments of $203. Each installment included amortization of principal, interest and taxes. In addition thereto the cost of heating the premises and insurance was $52 per month making a total carrying charge of $255 per month, exclusive of repairs. Immediately after taking title she and her husband moved into the upper apartment now occupied by the tenant herein.
4. In the month of September, 1952 Else Lefevre and her husband moved into the lower apartment of the aforesaid premises and leased the upper partly furnished apartment to the tenant herein for a period of two years from October 1, 1952 to September 30, 1954 at a rental of $1,500 per annum payable in equal monthly installments of $125 each on the first day of each month in advance. The said lease lists the furniture and also requires the landlord to paint the apartment and perform other services and furnish heat and hot water. The lease contains the following clause: “It is understood and agreed that the two year term herein includes two summer seasons, and that the rent is based on a yearly basis for the convenience of *1059 the tenant and the monthly payments are likewise a convenience to the [tenant].”
5. Thereafter and on the 15th day of July, 1954 another lease was entered into between Else Lefevre and the tenant herein covering the same partly furnished upper apartment for the period from October 1, 1954 to September 30, 1955 upon the same rental. The said lease contained the same provision above quoted.
Thus the tenant herein occupied the partly furnished upper apartment for three years at a rental at $125 per month which included furnishing of heat by the landlord for the eight winter months of each year.
6. In September of 1953 Else Lefevre’s husband died while she and her said husband occupied the lower apartment. Being without funds and being unable to pay the aforesaid monthly installments of $255 she was obliged to rent the lower apartment formerly occupied by her and her husband for $125 per month. In order to sustain herself she went to work in a factory at 95 cents per hour. The most she ever earned was $40 per week. Being utterly without 'funds she slept in the cellar of the building. She testified that there was no kitchen in the cellar and that she had her meals in restaurants. The cellar had no bath and that she was obliged to go to the home of friends to take a bath.
The rent director claims that because she slept in the cellar, the aforesaid building is a three-family house and as such is still under control.
During the trial all of the parties requested me to examine said cellar. Pursuant to such request on February 16, 1956 I examined the said cellar with one Sydney Loventhal a real estate broker who had the key thereto.
In order to get to the cellar, I was obliged to walk through a long narrow automobile driveway to the rear of the building and then walk down several steps leading into the cellar. I found the walls of the cellar to be of unfinished concrete blocks. The ceiling is unfinished with water pipes, steam pipes and electric wires exposed. The cellar floor is made of cement. I found the cellar cluttered and piled with old and discarded beds and mattresses and other furniture, old, broken and unused iceboxes, old and unused refrigerators, screens from all the windows in the two apartments. There was an old double soapstone laundry wash tub. There was an old stove formerly used to boil water for washing clothes. It was disconnected and pushed aside against a wall of the cellar. I found wash lines strung from one end of the cellar to the other upon which *1060 both tenants would hang wet wash to dry. I also found an old electric washing machine. At the southernmost end of the cellar, there was a small room which was formerly occupied by a gardener or a maid of one of the tenants. Mr. Loventhal and I looked for the toilet in the cellar. After searching for about 10 minutes we found the toilet located at the most northern part thereof. In order to get into the toilet one must walk up several steps and then stoop down, otherwise the person’s head would strike against the ceiling. The broken outside shower was replaced with a portable metal shower in the basement for the use of the tenants and others when they came back from bathing at the beach.
From my inspection of the aforesaid cellar, the small room, and toilet facility, I am satisfied that under no stretch of the imagination can same be classified as an apartment.
Mr. Peter J. Devine, building commissioner of the City of Long Beach, testified that the premises were and are a two-family dwelling located in a two-family zone.
Mr. Irving Shapiro, water inspector of the City of Long Beach, testified that the premises were and are a two-family dwelling.
Mr. George A. L. Duffy, a real estate broker for many years in the city of Long Beach also testified that the premises were and are a two-family dwelling. He further testified that he had registered the said premises on behalf of the aforesaid George Balabus as a two-family dwelling.
The registration exhibits put into evidence by the rent administrator certify the premises to be a two-family dwelling.
It is undisputed that Mrs. Lefevre paid no rent for sleeping in said cellar. "While she lived in said cellar and being unable to maintain the building she sold and conveyed the same to the landlord herein on August 14,1955. The landlord permitted her without any rent or charge to continue to sleep in said cellar until October 5, 1955 when she voluntarily vacated the same.
From my aforesaid inspection of the cellar and the testimony adduced upon the trial of this proceeding, I am convinced that this case falls squarely in line with the ruling in the case of Matter of Moran v. McGoldrich (133 N. Y. S. 2d 172). In that case a 75-year-old domestic worker employed in the neighborhood was permitted to sleep in the storeroom of an unfinished basement without kitchen facilities and without paying rent. The court held on page 174: “A finding that a person ‘lives independently ’ would be a gross miscarriage of justice where the facts disclose that she lives in a basement used as a store room; that various articles belonging to the landlord are stored there; that one corner of the store room contains a bed * * * that *1061 she paid no rent and was allowed to remain as an act o'f charity”.
The court concluded that such occupancy does not make a legal two-family house into an illegal three-family or multiple dwelling.
From all of the foregoing, I decide upon the facts and upon the law that the building involved in this proceeding is a two-family dwelling and not a three-family dwelling. That prior to and on and after July 1, 1955 Mrs. Lefevre the former owner of the premises occupied same in part until August 14, 1955 when she conveyed title to the landlord herein.
I, therefore, find that the subject premises met the statutory requirements and that the aforesaid two-family dwelling was decontrolled on July 1, 1955 and thus was beyond the jurisdiction of the State Bent Administrator. In view of the fact that the subject premises became decontrolled on July 1, 1955 pursuant to the aforesaid statute, the rent administrator had no jurisdiction over same and had no right to reduce the rent as aforesaid by the said order dated November 28, 1955.
I, therefore, grant a final order in favor of the landlord and against the tenant herein.
At the conclusion of the trial of this proceeding the tenant and the landlord expressed a desire to enter into a new lease for one year at a rental of $125 per month if the premises be found decontrolled. If the landlord and tenant shall have entered into a new lease then no warrant of dispossess will be issued, other • wise such warrant will be issued but the tenant herein is hereby given the opportunity to make application to this court for a stay of execution thereof pursuant to section 1435 of the Civil Practice Act.