OPINION OF THE COURT
Geoffrey J. O’Connell, J.
Petitioners commenced this special proceeding pursuant to CPLR article 78 by order to show cause dated November 8, 1996. They seek an order directing that respondents, in determining which students are entitled to bus passes, use measurements along "a highway or highways over and upon which a school bus regularly travels” and not use measurements over the Lee Place Walkway through Marjorie Post Park.
Petitioner Arlyn Oaks Civic Association has not been described or characterized in the papers submitted or evidence heard, but it appears to be an association of persons who reside in a particular geographical area within the Massapequa Public School District. Petitioners Francis X. Duffy, Ann DeLetto and John Sweeney are parents of children who currently attend Unqua Elementary School. Respondent James I. Brucia is the Superintendent of the Massapequa Public Schools and also named as a respondent is the Massapequa Public Schools Board of Education.
Upon submission of the petition and answer on November 20, 1996, the court directed an immediate hearing. Testimony was taken on December 2, 1996 with additional evidence and final arguments heard on December 12, 1996.
Factual Setting
Sometime prior to November of 1995, petitioner Duffy applied for a bus pass for his son who attended the Unqua Elementary School. Education Law § 3635 (1) (a) provides in pertinent part: ''[T]ransportation shall be provided for all children attending grades kindergarten through eight who live more than two miles from the school which they legally attend and for all children attending grades nine through twelve who live more than three miles from the school which they legally attend and shall be provided for each such child up to a *637 distance of fifteen miles, the distances in each case being measured by the nearest available route from home to school.” (Emphasis supplied.) The statute permits school districts to lower the mileage thresholds provided transportation is offered equally to all children in like circumstances residing within the district. The Massapequa Public School District availed itself of this option and set mileage mínimums of one-half mile for kindergarten students, 1 mile for grades 1 through 6 and 7 through 9, and Vh miles for grades 10 through 12.
Sometime prior to October 7, 1964, the Town of Oyster Bay (hereinafter Town) acquired a tract of land which it developed into Marjorie Post Park. This large recreational facility includes a pool and a skating rink as well as a picnic area. It is bordered on the south by Merrick Road, on the west by a large body of water, and on the east by Unqua Road. The Unqua Elementary School is located just north of the park on the east side of Unqua Road. The body of water to the west of Marjorie Post Park gradually narrows as one proceeds from south to north. The area to its west is a residential community. Approximately 600 to 650 feet from the northwestern boundary of the park the body of water becomes little more than a brook which serves Nassau County as a drainage channel. At that approximate point Lee Place, a public street, extends over the drainage channel and terminates at the park property. A macadam path proceeds from the end of Lee Place north along the eastern side of the drainage channel to the northern boundary of the park where it turns at a right angle to the east and proceeds approximately 75 feet or so along private property to a point where Conde Lane, another public street, ends. This path is commonly known as the "Lee Place Walkway”. From the point at which the Lee Place Walkway meets the end of Conde Lane, it is a short distance along public streets to Unqua Road and the Unqua Elementary School. No through street crosses the drainage channel or the park.
The parties agree that the distance from petitioners’ homes to the Unqua Elementary School, when measured using the Lee Place Walkway, is less than the minimum necessary to entitle them to bus transportation. They also agree that, when the Lee Place Walkway is not utilized and the measurement is done over public streets, the distances exceed the minimum necessary to qualify for bus transportation.
Legal Contentions
Petitioners contend that the Lee Place Walkway is not a "route” within the meaning of Education Law § 3635 (1) (a). *638 They rely upon the definition of "route” in Education Law § 3621 (3) which provides: " 'Route’ means a highway or highways over and upon which a school bus regularly travels in accordance with a schedule maintained for the transportation of pupils from their homes to school.” They further argue that in measuring distances for busing purposes a school district cannot use routes which are not public streets and which traverse property which the school neither owns nor maintains.
Respondents contend that the Lee Place Walkway, which has been used by students since 1964, is a route within the meaning of Education Law § 3635. They argue that it is a publicly maintained path of travel which meets the criteria of the Department of Education for a route used to determine travel distances for busing purposes. They further argue that this special proceeding is barred by the applicable Statute of Limitations and that the Arlyn Oaks Civic Association lacks standing to pursue this litigation.
Statute of Limitations
Education Law § 3635 (2) requires parents desirous of receiving transportation to and from school to submit a written request to the school board or school trustees not later than the first day of April preceding the next school year. A late request for transportation will not be denied where there is a reasonable explanation for the delay (Education Law § 3635 [2]) and will be granted, even in the absence of a reasonable explanation, if transportation can be provided to all similarly situated students under existing transportation arrangements at no extra expense. (Matter of Skinner, 29 Educ Dept Rep 200.) The request requirement is necessary to enable school officials to budget for and make arrangements to provide transportation in a reasonable and economical manner. (Matter of Patterson, 23 Educ Dept Rep 458; Matter of Cronkrite, 24 Educ Dept Rep 331.)
The applicable Statute of Limitations is that contained in CPLR 217 for an article 78 proceeding which is four months after the determination becomes final and binding or the official’s refusal, upon demand, to perform a duty. No evidence was submitted as to whether any of the individual petitioners submitted a written request for transportation prior to April 1, 1996. Nor is there evidence of any late request. The only testimony was as to requests for transportation made and denied prior to April 1, 1996, so that the Statute of Limitations *639 expired, at the latest, on August 1, 1996. Petitioners argue, however, that the respondents’ refusal to provide bus passes is a continuing wrong giving rise to successive causes of action. (See, 509 Sixth Ave. Corp. v New York City Tr. Auth., 15 NY2d 48, 52.) Petitioners’ right, if any, to bus passes is recurrent rather than continuous. (Cf., Matter of New York State Conference of Blue Cross & Blue Shield Plans v Cooper, 173 AD2d 60, 63 [3d Dept 1991].) An annual prerequisite to exercising that right is compliance with the Education Law § 3635 (2) requirement of a written request prior to April 1. Petitioners offer no evidence of having made such written request.
Petitioners contend that, after April 1, 1996 and within four months of commencement of this special proceeding, a fence which formerly ran along the easterly side of the Lee Place Walkway and the southerly side of the path as it approaches Conde Lane was removed and replaced with a fence which runs along the westerly side separating the path from the drainage channel. They contend that this changed circumstance made in response to complaints as to the safety of children using the Lee Place Walkway somehow restarted the four-month period in which to bring this proceeding. The fence has no bearing on either the definition of "route” urged by petitioners nor that urged by respondents. Movement of the fence in no way explains petitioners’ failure to commence this proceeding within the four-month period fixed by statute. Sound public policy supports an orderly system of budgeting for and collecting revenue to support public services which would be threatened by a failure to enforce the four-month Statute of Limitations in circumstances such as presented in this case. (Cf., Press v County of Monroe, 50 NY2d 695, 704.)
Accordingly, petitioners’ application for a direction that bus passes be issued for the current academic year is denied.
Declaratory Judgment
The fact that the applicable Statute of Limitations precludes granting petitioners relief for the current academic year does not, however, preclude all relief. CPLR 103 (c) provides that a remedy is not to be denied merely because of the form in which an action is brought. Thus, the court may treat an improper article 78 proceeding as an action for declaratory judgment, where jurisdiction over all necessary parties has been obtained, in order to resolve a controversy. (Matter of Kovarsky v Housing & Dev. Admin., 31 NY2d 184, 192; Matter of Lakeland Water Dist. v Onondaga County Water *640 Auth., 24 NY2d 400, 408.) The controversy between these parties is clearly "justiciable” (CPLR 3001) in that an application for transportation for the coming academic year would be timely and the parties have been actively disputing the use of the Lee Place Walkway as a "route” within the meaning of Education Law § 3635 for more than two years. A declaration of the respective rights of the parties under the statute would thus be appropriate. (East Meadow Community Concerts Assn. v Board of Educ., 18 NY2d 129, 135.)
Meaning of "Route”
As noted, petitioners contend that "route” as used in Education Law § 3635 should be understood, as it is defined in Education Law § 3621 (3), to mean: "a highway or highways over and upon which a school bus regularly travels in accordance with a schedule maintained for the transportation of pupils from their homes to school”. However, the definitions contained in section 3621 are preceded by the limiting language: "As used in this part”, referring to part II of article 73. Section 3635 is contained in part III, and not part II, of title 5, article 73. Moreover, section 3620 entitled "Application”, the first section in part II, provides: "It is not intended by any provision in part two of this article to change or modify in any manner the provisions of this chapter providing and granting transportation to all children irrespective of the school they legally attend.” (Emphasis supplied.) Nevertheless, petitioners rely on a rule of statutory construction that, absent any indication of a contrary legislative intent, words are presumed to have the same meanings when used in different parts of the same statute. (McKinney’s Cons Laws of NY, Book 1, Statutes § 236.) The presumption of similar meaning may be rebutted by other indications of legislative intent and is an aid to interpretation rather than a controlling rule. (McKinney’s Cons Laws of NY, Book 1, Statutes § 236.)
Education Law article 73, part II deals with State apportionment of revenues to local school districts for transportation costs known as a transportation quota. (94 NY Jur 2d, Schools, Universities, and Colleges, § 324.) The Department of Education regulations implementing the statutory provisions make clear that mileage calculations under article 73, part II are for "State aid purposes”. (8 NYCRR 156.2 [a].) The caveat in Education Law § 3620 that the provisions of part II are not intended to change or modify eligibility requirements for transportation is reinforced by reading the definition of "route” *641 in the context of the other definitions in section 3621. The definition of "pupil” differentiates instructively between "route” and "road” in providing: " 'Pupil’ means a child * * * who lives more than one and one-half miles from the school which he or she attends, measured by the nearest available road to such school, or a child who lives more than one mile from an approved route, measured by the nearest available road to such route”. (Education Law § 3621 [2] [a]; compare, Education Law § 3635 [1] [a].) "Daily mileage” is based on the distance traveled on its scheduled "route” as approved by the Commissioner pursuant to Education Law § 3622 (Education Law § 3621 [4]; see, 8 NYCRR 156.2 [a]) and not the distances of the "routes” between school and the homes of the various students. Thus, the definition of "route” in Education Law § 3621 (3) is meant to identify a regularly scheduled bus route with student pickup points the mileage of which is used in calculating State aid.
The court finds that the Legislature intended the definition of "route” provided in Education Law § 3621 (3) to apply only to part II of article 73 and cannot be relied upon in applying Education Law § 3635.
Respondents urge that "route” should be understood to mean "the nearest available publicly maintained route”, an interpretation which the Department of Education has adopted in a series of decisions. (See, Matter of Pellegrino, 2 Educ Dept Rep 159 [1962].) Matter of O’Brien (2 Educ Dept Rep 391, revd 3 Educ Dept Rep 24) dates from 1963 and involved a pathway over an undeveloped "paper street” which the City of Buffalo turned over to the Board of Education to maintain. Focusing on whether the maintenance included lighting and snow removal, the Commissioner initially found the path inappropriate for use, but reversed himself upon submission of additional proof. Both Matter of Haas (8 Educ Dept Rep 63) and Matter of Pizzariella (22 Educ Dept Rep 417) approved as reasonable the use of pathways which traversed school-owned property and which were maintained by the respective school districts. In Matter of Pizzariella (supra, at 419), the Commissioner noted that by relying upon a pathway not open to the general public, the school district assumed responsibility for snow removal and supervision, if necessary.
Petitioners argue that the crucial and common aspect of those cases in which the Commissioner has approved the use of a pathway in measuring distances to determine eligibility for busing is that the path traversed property which the school *642 district either owned or had an easement over and which it maintained. They cite Matter of Zellweger (4 Educ Dept Rep 190) in which a path across private land was not permitted to be used for measurement purposes because the school district had neither the duty nor the power to maintain it. The court finds, however, that the decisive factor in the Department of Education decisions is maintenance, not ownership. The Department of Education neither uses private roads for determining busing eligibility nor provides for door-to-door busing over private roads because such a road receives: "no maintenance either in connection with its surfacing or grading or snow removal from any official source” (Matter of Jordan, 71 State Dept Rep 176, 177 [1951]; see also, Matter of Crolly, 74 State Dept Rep 155 [1954]; Matter of LaRue, 1 Educ Dept Rep 280 [1959]; Matter of Kurts, 14 Educ Dept Rep 301 [1975]), but measurements are made over publicly maintained roads which school districts do not own.
The decisions of administrative agencies, like the Department of Education, interpreting a statute are, of course, not conclusive upon a court, but they are entitled to great weight. (Colman v Kinsella, 2 Misc 2d 1054; Filardo v Foley Bros., 181 Misc 136; Annotation, Applicability of Stare Decisis Doctrine to Decisions of Administrative Agencies, 79 ALR2d 1126.) The court concludes that, as used in section 3635 of the Education Law, "route” means the nearest available publicly maintained route.
Maintained
All agree that a Nassau County crossing guard is assigned to the Lee Place Walkway for appropriate periods in the morning and afternoon. While there was some dispute as to whether there was an unobstructed view of the entire path from Lee Place, the crossing guard testified that she walked a part, if not all, of the pathway’s distance with the pupils. It may well be that the students are unobserved from their entrance upon Conde Lane until they meet another crossing guard at Unqua Road, but this portion of their route of travel is unquestionably over public streets which may be utilized in measurements for bus eligibility.
Testimony from the Town of Oyster Bay Commissioner of Parks and the Supervisor of Parks established that the Lee Place Walkway is maintained as part of the Marjorie Post Park. The park officials are aware of its use by school children and accord it a snow clearance priority just after public streets *643 which must be opened for emergency vehicles. Witnesses testified to having observed Town of Oyster Bay employees clear snow from the pathway. The crossing guard, who has been on the same post for more than a decade, testified that when it has been necessary to contact the park officials about snow removal on the path, they have been responsive. While the pathway is not illuminated, the testimony elicited by respondents that school hours are such that the students are not required to travel in hours of darkness, even in winter, was not contradicted.
The court finds that the Lee Place Walkway is publicly maintained.
Equal Protection
Petitioner DeLetto contends that the district busing policy which sets the minimum distance for bus transportation for kindergarten students at one-half mile and at one mile for students in grades 1 through 6 is arbitrary and capricious as applied to her children in that it affords transportation to her child in kindergarten while denying it to siblings in upper grades. Petitioner relies upon Matter of Goldberg v McIntyre (95 Misc 2d 312) in which, without citing supporting authority, the court found a district policy setting a minimum distance for grades 5 and 6 different from that for 7 through 12 to be arbitrary and capricious. The same decision, without citation or acknowledging contrary Department of Education decisions, utilized a private road for measurement purposes.
For present purposes it suffices to note that State law permits, but does not require, a school board to provide kindergarten instruction. (Education Law § 1712.) Moreover, children of kindergarten age are not subject to the requirement of mandatory full-time day instruction. (Education Law § 3205.) Accordingly, school districts customarily offer less than full-day instruction often in double or even triple sessions. Under such circumstances kindergarten students, whose ages are between four and six (Education Law § 1712), attend school at times different from their older siblings and are deprived of whatever safeguards they might derive from the presence of older children. Such circumstances afford a sufficient rational basis for distinguishing between kindergarten and other primary grades. Equal protection does not require that all persons be dealt with identically, but that there be a rational basis for classifying and treating persons differently. (See, Neale v Hayduk, 35 NY2d 182, 186.)
*644 Hazards
Petitioners refer the court to Education Law § 3635-b relating to pupil transportation in child safety zones. They do not contend, however, that they qualify for busing under the implementing regulations adopted by the Commissioner of Transportation (17 NYCRR part 191). The statute and regulations are clearly addressed to hazards posed by vehicular traffic in the vicinity of the students’ pedestrian routes of travel.
There are risks involved in transportation by bus as there are in walking on public streets or publicly maintained pathways. Under our system the responsibility for weighing these risks together with the competing interests involved in running a school system rests initially with the school administrators employed by the democratically elected school board. Those aggrieved by their determination may have recourse to the political process or to the courts. The courts, however, will upset the determination of an administrative body acting within its jurisdiction only if the action taken lacks rationality to the point where it constitutes an abuse of discretionary authority. (Matter of Pell v Board of Educ., 34 NY2d 222, 231.) Rationality is what is reviewed. This court finds that, whether or not it would make the same judgment, it cannot be said that respondents’ transportation policy lacks a rational basis.
The petition is dismissed.