OPINION OF THE COURT
Memorandum.
Appeal from order dismissed.
Final judgment unanimously modified by vacating the award to tenant and dismissing the counterclaim with leave to tenant to commence a fair market rent appeal; order dated March 30, 1995 reversed and tenant’s motion for summary judgment denied. As so modified, final judgment affirmed without costs.
In this nonpayment proceeding, the petition, dated January 28, 1994, seeks rent arrears at a rate of $642 per month. After a stipulation of settlement was vacated, tenant filed an answer on August 26, 1994 in which he counterclaimed for rent overcharges collected since the inception of the tenancy in December 1989 and for treble damages. In support of a motion for summary judgment with respect to this counterclaim, tenant showed, inter alia, that landlord had purchased the building in 1982 but had not registered the apartment until July 25, 1994, after tenant had moved to vacate the stipulation based on landlord’s failure to register; that the statements made in the initial and annual apartment registrations which landlord filed on July 25, 1994 were false with respect to some of the tenants claimed to be in occupancy on various dates and the terms of their leases; and that the initial apartment registration was never served upon him. Tenant claimed that as a result of landlord’s noncompliance with the registration requirements, the legal regulated rent was $75.20, the last rent-controlled rent.
In opposition to tenant’s motion, landlord asserted, inter alia, that when she purchased the building in 1982 it was vacant and not suitable for living; that she renovated the building slowly, and it remained vacant until 1987; and that she *211 had in good faith believed that she was entitled to charge a fair-market rent because of the vacancy and the renovations.
The Housing Court ruled that as a result of the defects in the contents and service of the initial apartment registration filed by landlord on July 25, 1994, the registration was not “proper” within the meaning of Rent Stabilization Law of 1969 (Administrative Code of City of NY) § 26-517 (e). Relying on Smitten v 56 MacDougal St. Co. (167 AD2d 205), the court concluded that the only legal rent was the last rent under rent control. Accordingly, the court granted tenant’s motion for summary judgment to the extent of determining that the last rent-controlled rent was the legal rent and by “reducing” tenant’s rent to that rent. Thereafter, the parties stipulated that the difference between the amount paid by tenant since December 1989 and the amount which should have been paid if the rent were $75.20 was $25,058. Finding that landlord had failed to establish that the overcharges were not wilful, the court awarded tenant treble damage of $75,174.
In Verveniotis v Cacioppo (164 Misc 2d 334), this court followed the First Department’s ruling in Smitten (supra) that where no initial registration had been filed the legal regulated rent was the last rent-controlled rent. However, upon further extensive consideration, we have concluded, for the reasons that follow, that the Smitten ruling is inconsistent with the relevant provisions of the Rent Stabilization Law and Code and that its application results in the imposition upon owners of penalties that far exceed those which the Legislature intended. With respect to the issue of stare decisis (see, Duffy v Horton Mem. Hosp., 66 NY2d 473, 475; Mountain View Coach Lines v Storms, 102 AD2d 663), we believe that in light of the inconsistencies between Smitten and the Rent Stabilization Law, and in particular the . supervening amendments to this law enacted as part of the Rent Regulation Reform Act of 1993 (L 1993, ch 253), it is our duty to apply the clear meaning of the statutes and not the decision (see, Rovito v Melendez, 175 Misc 2d 279; 21 CJS, Courts, § 146, at 175-176).
We begin with an examination of the relevant historical background. In 1971, the Legislature, acting on the recommendation of Governor Rockefeller, passed the Vacancy Decontrol Law (L 1971, ch 371). This law exempted newly vacated apartments from rent regulation irrespective of whether the apartments had previously been subject to rent control or rent stabilization. A companion act, the Urstadt Law (L 1971, ch 372), barred New York City from regulating exempt units. As *212 stated by the Governor in his accompanying memorandum (1971 McKinney’s Session Laws of NY, at 2608), the purposes of these enactments were to restore reasonable market incentives for the maintenance and upgrading of existing housing, to discourage the abandonment of housing and to encourage the massive construction of new housing. It was not long thereafter, however, that the Legislature had a change of heart and enacted the Emergency Tenant Protection Act of 1974 (L 1974, ch576, § 4), which allowed New York City and other municipalities to again regulate apartments that had been completed prior to January 1, 1974 and which brought vacancy decontrolled units under rent stabilization (see generally, Estis & Turkel, The Impenetrable Thicket; Unauthorized History of New York State and City Rent Laws, NYLJ, June 18, 1997, at 5, col 2; Scherer, Residential Landlord-Tenant Law in New York §§ 4:9, 4:10). With respect to the rents which could be charged, the 1974 act stated that the initial regulated rents of subject apartments would be the fair market rents which had been agreed to by the parties, provided that for apartments that had previously been subject to rent regulation the tenants would be entitled to apply to the administrative agency for an adjustment of the rent to conform to the rents generally prevailing in the area (Rent Stabilization Law of 1969 [Administrative Code] former § YY51-6.0.1, now § 26-512). It is clear that the Legislature’s intention was to allow owners of all housing accommodations subject to this law the benefit of a fair market rent.
The rent registration scheme was not introduced until nine years later in the Omnibus Housing Act of 1983 (L 1983, ch 403). As a central principle of this statutory scheme, the Legislature provided that, notwithstanding any contrary provisions of the law, the “legal regulated rent” would henceforth be the registered rent (Rent Stabilization Law of 1969 [Administrative Code] former § YY51-6.0.1 [e], now § 26-512 [e]; see also, Rent Stabilization Code [9 NYCRR] § 2520.6 [f]; § 2521.2 [a]). This principle was further implemented by the provision of penalties for an owner’s failure to register. The act provided: “The failure to file a proper and timely initial or annual rent registration statement shall, until such time as such registration is filed, bar an owner from applying for or collecting any rent in excess of the legal regulated rent in effect on the date of the last preceding registration statement or if no such statements have been filed, the legal regulated rent in effect on the date that the housing accommodation became subject to the registration requirements of this section. The filing of a late *213 registration shall result in the prospective elimination of such sanctions”. (Rent Stabilization Law of 1969 [Administrative Code] former § YY51-6.0.6 [e], current § 26-517 [e], as it appeared prior to its amendment in 1993.)
As can be seen, the penalty provided in Rent Stabilization Law of 1969 (Administrative Code) § 26-517 (e) for an owner’s failure to file an initial registration is a bar to the owner’s collection of rent in excess of the legal regulated rent in effect on the date the apartment became subject to the rent registration requirement. It appears that the Legislature had in mind apartments that had been subject to rent stabilization prior to the enactment of the registration requirement, for which legal regulated rents had already been established, and the penalty provided was a rent freeze. A similar rent freeze was provided for the failure to file an annual registration. The law failed to make clear, however, what the penalty should be for apartments that had previously been subject to rent control, and for which legal regulated rents had not been established.
In Smitten (supra), the First Department ruled that for these apartments the legal regulated rent was the old rent-controlled rent. It should be readily apparent, however, that this ruling, which deprives the owner of the benefit of a negotiated first rent and rolls back the rent to the rent-controlled rate, imposes a sanction that is highly disproportionate to the rent freeze which the Legislature intended to impose. In contrast, the Division of Housing and Community Renewal (DHCR) has taken the position that where the apartment had previously been subject to rent control, there is no legal regulated rent until a fair market rent has been established by tenant’s filing of a fair market rent appeal. In support of this position, DHCR has stated that it could perceive no legislative intention to deprive owners of such apartments of the benefit of a negotiated first rent (see, GSL Enters. v Zseleczky, NYLJ, June 22, 1992, at 30, col 1 [Civ Ct, NY County, Gould, J.]).
In addition to imposing an unduly harsh sanction, the Smitten ruling also defines the term “legal regulated rent” in a manner that is inconsistent with its definition under the Rent Stabilization Law of 1969 and the Rent Stabilization Code. As discussed above, the relevant provisions of the Rent Stabilization Law of 1969 and the Rent Stabilization Code initially defined the term “legal regulated rent” with reference to the negotiated first rent and were later amended to add the qualification that this rent be registered. By defining the term “legal regulated rent” to mean the old rent-controlled rent, the Smit *214 ten Court contravened both requirements of this definition, for the rent-controlled rent is neither a free market rent nor is it “registered with the DHCR in accordance with the RSL” (Rent Stabilization Code [9 NYCRR] § 2520.6 [e]).
The Legislature dealt the final blow to Smitten’s viability in the 1993 Rent Regulation Reform Act, which amended Rent Stabilization Law of 1969 (Administrative Code) § 26-517 (e) so as to preclude a finding of an overcharge where the increases taken were lawful except for the failure to file a registration. Under the Smitten rule, this legislation could not have its intended effect. Because Smitten (supra) defines “legal regulated rent” as the last maximum base rent and not as the negotiated first rent, the increases taken above the negotiated first rent could not have been lawful. As stated above, in a case of such clear conflicts between a decision and the underlying legislation, particularly as subsequently amended, it is the legislation which must govern.
In view of the foregoing, tenant’s overcharge claim does not lie because a legal regulated rent has not been established. Accordingly, we reverse the judgment in favor of tenant and dismiss tenant’s overcharge counterclaim with leave to tenant to file a fair market rent appeal. We sustain the dismissal of landlord’s nonpayment proceeding with leave to landlord to commence a new proceeding upon the establishment of a legal regulated rent. We note that tenant’s time to file a fair market rent appeal has not run because neither he nor his predecessors were ever properly served with notice of the initial regulated rent (Rent Stabilization Code [9 NYCRR] §§ 2523.1, 2528.2 [d]; Matter of Weinreb Mgt. v State Div. of Hous. & Community Renewal, Off. of Rent Admin., 231 AD2d 473; Matter of McKenzie v Mirabal, 155 AD2d 194).
We incidentally note that it was improper for the court to allow the recovery of overcharges collected in the period prior to four years before the claim was interposed and to allow the recovery of treble damages for overcharges occurring more than two years before the claim was interposed (Rent Stabilization Law of 1969 [Administrative Code] § 26-516 [a] [2]). However, in view of the result reached herein, these errors have been rendered academic.
The appeal from the order is dismissed because the right of direct appeal therefrom terminated with the entry of the judgment (Matter of Aho, 39 NY2d 241). The issues raised on the appeal from the order are brought up for review and have been *215 considered on the appeal from the judgment (CPLR 5501 [a] [1]).
Aronin, P. J., Scholnick and Patterson, JJ., concur.