OPINION OF THE COURT
Memorandum.
Order modified by providing that tenants’ cross motion for summary judgment on the counterclaim is granted and judgment directed to be entered in favor of tenants in the sum of $139,220, and by striking the provision severing landlords’ “claim” for a rent increase; as so modified, affirmed without costs.
In March 1995, Lucie Myers commenced a holdover proceeding against tenants based on the termination of an alleged sublease. In an answer dated March 22, 1995, tenants asserted that Lucie Myers’ overtenancy was illusory and that they were actually rent-stabilized tenants of Lucie’s mother, Shirley Myers, the owner of the building. (Shirley Myers was subsequently added as a party.) They also counterclaimed for rent overcharges, treble damages and attorney’s fees. The Civil Court (S. Krauss, J.) ruled that tenants were entitled to the protection of rent stabilization and dismissed the holdover proceeding. The court also severed the counterclaims and converted them to a plenary action.
Thereafter, Shirley and Lucie Myers (hereinafter landlords) moved, in the severed action, for summary judgment on the ground that the overcharge counterclaim was time barred under CPLR 213-a and Rent Stabilization Law of 1969 (RSL) (Administrative Code of City of NY) § 26-516 (a). In support of this motion, landlords asserted that the cause of action accrued in April 1990 when tenants first entered into possession and paid an excessive rent, and that the claim was not interposed until more than four years later on March 22, 1995. Landlords contended that the Rent Regulation Reform Act of 1997 (L 1997, ch 116 [Act]), which was made applicable to pending proceedings (L 1997, ch 116, § 46), barred examination of the *610 rental history for more than four years before the claim was interposed.
In opposition, and in support of a cross motion for summary judgment on their counterclaim, tenants argued that the Statute of Limitations had never begun to run because landlords had not served and filed annual registrations during the period of their tenancy. (Actually, landlords had falsely registered the apartment as exempt “owner occupied/employee” but did not serve these registrations on tenants.) Tenants contended that RSL § 26-516 (a) and CPLR 213-a, as amended by the 1997 Act, precluded examination of the rental history for more than four years only where landlord had filed registration statements setting forth rents in the four years prior to the most recent statement. Tenants showed that the last registered rent was $502 in 1988. They set forth the details of their rent payments, which ranged between $1,900 and $2,100 per month, and established that the difference between what they had paid in the four years prior to the interposition of their counterclaim and what they would- have paid at $502 per month was $69,708. They also asserted, mistakenly, that of said sum the amount to be trebled for the two years prior to the interposition of their claim was $37,552. (In calculating the two-year period for treble damages, tenants began with February 1993, whereas they should have begun with April 1993. The correct amount subject to trebling is $34,756.)
In reply papers as well as in their examinations before trial (portions of which were appended to tenants’ motion papers), landlords stated, inter alia, that although the apartment had been sublet four times since 1982, Lucie Myers had been living in the apartment immediately prior to tenants’ taking possession in April 1990. They further stated that landlords had renovated the apartment at that time at an itemized cost totaling $32,527.
The Civil Court denied landlords’ motion for summary judgment. It reasoned that the Statute of Limitations begins to run from the date a rent is registered and that here the statute did not begin to run because no rents had been registered. The court also denied tenants’ cross motion for summary judgment, reasoning that landlords were entitled to rent increases for the period that Lucie Myers was in occupancy immediately prior to tenants’ occupancy (Rent Stabilization Code [9 NYCRR] § 2522.4 [b] [3] [vi]) and that there were questions of fact as to the dates of Myers’ occupancy. Finally, the court severed landlords’ “claim” for a rent increase based on the alleged renova *611 tions without prejudice to an application by landlords to the Division of Housing and Community Renewal (DHCR) for an adjustment of the legal regulated rent (179 Misc 2d 225).
Although only landlords have appealed and tenants have not cross-appealed, we modify the order by providing that tenants’ cross motion for summary judgment is granted and by striking the provision severing landlords’ “claim” for an increase (see, Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 NY2d 106).
We begin our analysis by reviewing the history of the rent overcharge claim in relation to rent stabilization. Prior to the enactment of the Omnibus Housing Act of 1983 (L 1983, ch 403), the Rent Stabilization Law and the Code promulgated pursuant thereto provided only for a refund of the amounts collected by owners in excess of the lawful rent (RSL former § YY51-6.0 [c] [3], prior to 1983 amendment; former Code of Rent Stabilization Assn of NY City, Inc. § 10; see, Blodgette v Melohn, 124 Misc 2d 736). Unlike earlier rent-regulatory schemes, which had provided for the assessment of treble damages and attorney’s fees (see, e.g., Powell v Park Lex. Realty Corp., 280 App Div 136, affd 304 NY 960 [Rent Control Law]; Sisom v Filldor Realty Corp., 275 App Div 677 [Federal Emergency Price Control Act]; Jerome v Yudt, 186 Misc 408), the only penalty provided in the former Rent Stabilization Code was the discretionary partial or total expulsion from the Rent Stabilization Association (RSA) of owners found to have willfully overcharged (former Code of Rent Stabilization Assn of NY City, Inc. § 7 [a] [Code]). The lawful rent and thus the amount of any overcharge were calculated by reference to the first stabilized rent, and owners were required to keep all leases back to the date when the apartment first became stabilized (see, former Code § 42 [A]; Matter of Faymor Dev. Co. v Popolizio, 89 AD2d 857). By 1983, problems had arisen with this methodology because the rent history could extend back as far as 14 years, yet the agency (the Conciliation and Appeals Board [CAB]) would apply a “default” formula, which would presume an overcharge, if even one lease was missing (see, Estis and Turkel, Legislative Intent: Court Clarifies Procedure Used to Calculate Rent Overcharge, NYLJ, Jan. 28, 1998, at 5, col 2).
The Omnibus Housing Act of 1983 transferred the authority to administer the Rent Stabilization Law from the RSA and the CAB to DHCR; instituted a rent registration scheme (RSL former § YY51-6.0.6, now § 26-517; see generally, Murray v Morrison, 181 Misc 2d 209, 212-213); statutorily codified the *612 rent overcharge claim in its current form, the elements of which it changed to conform to the new registration scheme; introduced new penalties for rent overcharge, including the assessment of treble damages, interest and attorney’s fees; and enacted provisions designed to place time limits on claims for overcharges and for treble damages (RSL former § YY51-6.0.5, now § 26-516). To implement the registration scheme, the Legislature defined the “authorized” or legal regulated rent as the registered rent (RSL former § YY51-6.0.1 [e], now § 26-512 [e]) and defined an overcharge as the collection of rent in excess of the “authorized” rent (RSL formér § YY51-6.0.5 [a], now § 26-516 [a]).
Among the provisions enacted to fix time limits on the overcharge claim was a Statute of Limitations, CPLR former 213-a, which then provided that “an action on a residential rent overcharge shall be commenced within four years of such overcharge” (L 1983, ch 403, § 35). Because of the continuing nature of a rent overcharge, a complementary provision was inserted into the Rent Stabilization Law which was designed to clarify that recovery could be had for overcharges collected within the four years prior to assertion of the claim only if the claim could be stated without reference to an overcharge which had occurred before the four-year period. The law enacted provided that an overcharge complaint had to be filed “within four years of the first overcharge alleged and no award of the amount of the overcharge may be based upon an overcharge having occurred more than four years before the complaint is filed” (RSL former § YY51-6.0.5 [a] [2], now § 26-516 [a] [2], prior to 1997 amendment). We incidentally note that this last provision is not a mere Statute of Limitations but is a substantive limit on the overcharges for which recovery can be had. That is, if a claim that an overcharge occurred within the four-year period could only be established by showing that an overcharge existed before the four-year period, the claim could not be made out, irrespective of whether the Statute of Limitations had been pleaded (cf., Avner v Trump Mgt., NYLJ, May 19, 1995, at 34, col 5 [App Term, 2d & 11th Jud Dists]).
Additionally, the Act gave owners who duly registered the benefit of a methodology which calculated the overcharge in terms of the rent registered in the statement filed four years prior to the most recent registration statement, thus insulating these owners from examination of the rental history for the period before the filing of that statement. It provided that “the legal regulated rent for purposes of determining an overcharge, *613 shall be the rent indicated in the annual registration statement filed four years prior to the most recent registration statement, (or, if more recently filed, the initial registration statement) plus in each case any subsequent lawful increases and adjustments” (RSL former § YY51-6.0.5 [a], now § 26-516 [a]). The Act expressly exempted these owners, but only these owners, from the obligation of maintaining or producing rental records for more than four years prior to the most recent registration (RSL former § YY51-6.0.5 [g], now § 26-516 [g]).
Despite these provisions, however, some courts erroneously concluded that the Legislature had intended only to bar an award of damages for more than four years and that it had riot intended to prohibit the courts from examining the previous rental history to determine whether the rents stated in the registration statement filed four years prior to the most recent registration were lawful (e.g., Hart-Zafra v Pilkes, NYLJ, Feb. 1, 1995, at 29, col 2 [Civ Ct, NY County], affd sub nom. Zafra v Pilkes, NYLJ, Apr. 12, 1996, at 25, col 3 [App Term, 1st Dept], affd NYLJ, July 28, 1997, at 25, col 4 [App Div, 1st Dept] [but subsequently recalled and vacated 245 AD2d 218, revg App Term, as discussed below]; 78/79 York Assocs. v Rand, 175 Misc 2d 960). One of the Legislature’s goals in enacting the Rent Regulation Reform Act of 1997 (RRRA) (L 1997, ch 116) was to clarify that these cases had wrongly interpreted the statute. New York State Senator Leibell’s sponsor’s memorandum (Bill Jacket, L 1997, ch 116) stated in part as follows:
“justification:
“Recent court decisions have erroneously interpreted the language of the statute * * * to permit examination of the rental history of an apartment prior to the four-year period authorized by law. See, Zafra v Pilkes, Appellate Term, First Department (New York Law Journal, April 12, 1996) * * * These decisions are contrary to the decision in Avner v Trump Mgt. Inc., Appellate Term, 2nd Department (New York Law Journal, May 19, 1995), which correctly interpreted the Legislature’s intent when it held that the statutory scheme establishes a four-year limitation on the calculation of a rent overcharge and excluded proof of alleged overcharges accruing prior to the four-year period * * *
“When it amended the Rent Stabilization Law, the Legislature intended not only to limit an award for a rent overcharge to the four-year period preceding the complaint but also the examination of the rental history prior to that four-year period. This is evident not only from the express terms of the statute *614 itself, which precludes an award ‘based upon an overcharge having occurred more than four years before the complaint’, but also by the provisions which limited an owner’s obligation to produce rent records to the four-year period. Notwithstanding the judicial opinions to the contrary, it was and is the intention of the Legislature to preclude the examination of the prior rental history. This legislation is intended to statutorily codify the Legislature’s intent and in [sic] effectively establish a statute of limitations on challenges to rents and rent increases in effect prior to the four-year period preceding the filing of an overcharge complaint by a tenant.”
This legislative intent was given effect by amending CPLR, 213-a to provide: “An action on a residential rent overcharge shall be commenced within four years of the first overcharge alleged and no determination of an overcharge and no award or calculation of an award of the amount of any overcharge may be based upon an overcharge having occurred more than four years before the action is commenced. This section shall preclude examination of the rental history of the housing accommodation prior to the four-year period immediately preceding the commencement of the action.” In addition, the following language was added to RSL § 26-516 (a) (i), the provision giving duly registered owners the benefit of a legal regulated rent determined by reference to the registration statement filed four years previous to the most recent: “Where the amount of rent set forth in the annual rent registration statement filed four years prior to the most recent registration statement is not challenged within four years of its filing, neither such rent nor service of any registration shall be subject to challenge at any time thereafter.” As a result of these legislative changes, the Appellate Division, First Department, which had originally affirmed in the Zafra case (supra), recalled its opinion and reversed.
It is clear from this legislative history that the 1997 amendments were enacted to address the Avner and Zafra type of cases (supra), which involved contentions by tenants that the previous rental history could and should be examined to determine if overcharges had been taken which rendered the rent indicated in the statement filed four years previous to the most recent statement unlawful. Thus, the Legislature merely clarified what had always been explicit in the statute, i.e., that overcharge claims that could not be stated without reference to overcharges occurring before the four-year period or which involved an attempt to go behind the duly registered rents *615 could not be maintained. It must be emphasized that the Legislature added no rule that was not already explicit in the statute. It neither considered nor addressed the issue presented here, which is how the legal regulated rent and the overcharges are to be calculated where, as here, there were no proper registrations filed during the four-year period.
We reject landlords’ contention that the cause of action is here barred because the first overcharge alleged in the complaint occurred before the four-year period. We do not interpret the statutory provisions mandating that the complaint be filed “within four years of the first overcharge alleged” to require this result (see, Crimmins v Handler & Co., 249 AD2d 89, 91). Such a reading of the statutes would make their applicability dependent on the way the complaint was framed, for a complaint could easily have been drafted here which made no reference to any overcharge collected more than four years before the complaint was interposed. Moreover, landlords’ proposed interpretation would render superfluous the statutes relieving owners who are “duly registered” from keeping rental records for more than four years and giving these owners the benefit of a legal regulated rent determined with reference to the registration filed four years prior to the most recent, because the prior records and registrations of owners not duly registered would no longer be of any relevance. Most tellingly of all, landlords’ proposed interpretation would have the anomalous result that while a tenant’s claim for overcharge would be determined without reference to the legal regulated rent, a landlord’s nonpayment claim would still necessarily be determined with reference to the legal regulated rent, because a landlord may not recover more than that rent (cf., Rent Stabilization Code [9 NYCRR] § 2525.1 [“It shall be unlawful * * * for any person to demand or receive any rent * * * in excess of the legal regulated rent”]).
For these reasons, among others, we understand the statute to mean, as stated above, that a complaint must be filed within four years of the first overcharge that needs to be alleged in order to establish the existence of overcharges within the four-year period or, to use the language of the statutes as amended by the 1997 ERRA, that “no determination of an overcharge * * * may be based upon an overcharge having occurred more than four years before the complaint is filed” (CPLR 213-a, as amended; RSL § 26-516 [a] [2], as amended). Here, as noted, tenants’ claim can be stated without reference to any overcharge that occurred before the four-year period, and tenants *616 seek to recover only for the amounts collected above the authorized rent during the four-year period. In these circumstances, the last properly registered rent remains the authorized rent (RSL § 26-512 [e]; § 26-517 [e]; Rent Stabilization Code [9 NYCRR] § 2520.6 [f]; § 2521.2 [a]), and the amount of the overcharge is, by statutory definition, the amount collected over the authorized rent (RSL § 26-516 [a]). While it is true that in these situations the determination of the authorized rent will require an examination of the previous rent history, this is not the type of examination which the Legislature intended to prohibit. That this is so may be seen from the previously noted fact that the Legislature relieved only those owners who were “duly registered” from the obligation of keeping rental records for more than four years (RSL § 26-516 [g]). Clearly, owners who were not duly registered were not relieved of this requirement.
In the instant case, the last registered rent was $502 in 1988. Because landlords failed to file proper registrations after 1988 and have not late registered, they are barred from collecting any rent above that registered rent (RSL § 26-517 [e]; Matter of Hargrove v Division of Hous. & Community Renewal, 244 AD2d 241). They can collect none of the vacancy and guidelines increases, the increases for improvements, or the increases that they might have received for the period in which the apartment was owner occupied. Accordingly, tenants are awarded summary judgment in the sum of $139,220, representing rent overcharges and treble damages. In the exercise of discretion, we decline to further penalize landlords by awarding tenants attorney’s fees (RSL § 26-516 [a] [4]).
As noted above, landlords’ holdover petition was dismissed and the instant action involves only the counterclaims that were severed. Thus, while the Civil Court stated that it was severing landlords’ “claim” for a rent increase, there was in fact no claim for a rent increase interposed by landlords but merely an assertion, in opposition to tenants’ cross motion for summary judgment, that there was no overcharge because landlords were entitled to an increase based on improvements. For the reasons previously stated, landlords are not entitled to such an increase. Accordingly, the provision in the Civil Court’s order severing this “claim” is stricken.