OPINION OF THE COURT
Memorandum.
Order unanimously reversed with $10 costs, defendants’ cross motion for summary judgment denied, plaintiffs motion for summary judgment granted to the extent of awarding plaintiff summary judgment on the issue of liability, and matter remanded for an assessment of damages.
In August 1999, defendant 352 Bedford Avenue Realty Corp. commenced a holdover proceeding against plaintiff, a tenant in its building. The petition alleged, inter alia, that plaintiffs apartment was not subject to rent stabilization because it was contained in a building that was substantially rehabilitated on or after January 1, 1974 (Emergency Tenant Protection Act of 1974 § 5 [a] [5] [L 1974, ch 576, § 4] [ETPA]). Plaintiff’s answer in the holdover proceeding asserted that the apartment was rent stabilized and that the building had not been substantially rehabilitated since January 1, 1974. The answer also contained a counterclaim for rent overcharges. In a “so-ordered” stipulation dated October 29, 1999, it was agreed that the holdover proceeding would be marked off the calendar without prejudice and that the counterclaim would be severed for a plenary *432 action. Plaintiff then served the instant summons and endorsed complaint joining as a defendant Carmen Irizarry, who is the previous owner and the current managing agent. The complaint, as subsequently amended, alleges, inter alia, that plaintiff paid rent of $650 per month from May 1, 1997 through June 30, 1999, first to defendant Irizarry then to the successor corporation, and that, based on the last registration (the initial apartment registration filed in 1984), the lawful rent was $260 per month. The complaint seeks a refund of the overcharges as well as treble damages, interest, costs and attorney’s fees. Subsequent to the commencement of this action, late registrations were filed for the four years from 1996 to 1999.
Defendants’ answer in this action asserts, inter alia, that pursuant to a September 9, 1985 stipulation entered into in Civil Court holdover proceedings brought by a predecessor landlord against all the tenants then residing in the building and pursuant to a February 10, 1995 order of the Division of Housing and Community Renewal (DHCR), the building is not subject to rent regulation; that plaintiff is collaterally estopped from asserting that the premises is subject to rent stabilization because the issue was raised in the prior Civil Court and DHCR proceedings; that the cause of action is time barred under CPLR 213-a; and that the building is exempt because it was substantially rehabilitated.
Plaintiff moved for summary judgment. In support of the motion, plaintiff submitted affidavits from several tenants currently residing in the building attesting to the fact that the building and its major systems are old and could not have been substantially rehabilitated since 1974. Plaintiff also submitted documentary evidence tending to show the following facts: In 1984, a previous owner, Hector Elisalde, filed initial registrations for seven rent-stabilized units. The legal regulated rent for the apartment now occupied by plaintiff was registered as $260 per month. In late 1984, the building was purchased by Hickory Hill Associates, Inc. (Hickory Hill) at a judicial sale. Hickory Hill did not file annual registration statements in 1985, but instead commenced holdover proceedings against all the tenants then residing in the building, alleging that the building was exempt from rent stabilization because it had been substantially rehabilitated after January 1, 1974. Hickory Hill’s claim of substantial rehabilitation was evidently predicated on the fact that a new certificate of occupancy had been issued on April 2, 1985, after a store in the building had been converted to an eighth residential unit. The application *433 for the alteration had been filed on September 15, 1981 by Hector Elisalde, and the estimated cost for the conversion work was noted as $2,700.
Plaintiffs documents further showed that the 1985 holdover proceedings were settled by a so-ordered stipulation dated September 9, 1985. In the stipulation, Hickory Hill agreed to forego several months’ rent and to give all the tenants four-year leases at rents below the legal registered rents in return for a waiver by all the tenants of their claims to rent-stabilized status and for their acknowledgement that the building was decontrolled. On July 28, 1986, the building was purchased by defendant Carmen Irizarry (Santiago) and her son, Robert Santiago. At the end of the four-year leases, the tenants then residing in the building requested rent-stabilized renewal leases, and the owners refused their requests. In the holdover proceedings which followed, the Civil Court, by order dated April 16, 1990, denied the tenants’ applications to set aside their stipulation in the earlier proceeding, holding that it was a valid waiver of their rights.
In the interim, a new tenant, Ramona Huertas, moved into the building and, in July 1989, applied pro se to DHCR to compel the landlord to give her a lease. Landlord finally replied to Huertas’ complaint in 1993, arguing that the tenant was collaterally estopped from denying that there had been a substantial rehabilitation. By order dated February 10, 1995, the Rent Administrator ruled that pursuant to the 1985 Civil Court stipulation of settlement the building is not under DHCR’s jurisdiction (DHCR docket No. ZDH-210040-RV).
After presenting these facts and supporting documents, plaintiffs counsel argued, inter alia, that plaintiffs proof showed that the building had not been substantially rehabilitated and that the Civil Court and DHCR determinations were not binding on successor tenants.
Defendants cross-moved for summary judgment, arguing that the 1985 so-ordered stipulation, the 1990 Civil Court order denying the application to vacate the so-ordered stipulation, and the February 1995 DHCR Huertas order barred plaintiff from relitigating the issue of the building’s rent-regulatory status. Defendants argued, inter alia, that these were “building-wide” determinations that were forever binding on successor tenants (citing DHCR Operational Bulletin 95-2). Defendants also argued that plaintiffs action is time barred.
The Civil Court denied plaintiffs motion and granted defendants’ cross motion, stating that “taken together” the ac *434 knowledgement in the 1985 stipulation of settlement that the premises had been substantially rehabilitated and the four-year statute of limitations required that the cross motion to dismiss be granted.
We reverse.
DHCR Operational Bulletin 95-2 clarifies the procedure that the agency uses to determine issues of exemption from rent regulation due to substantial rehabilitation. In brief, it provides that an owner applying for such an exemption must establish that at least 75% of 17 specified building-wide and apartment systems have been completely replaced and that the building was previously in substandard condition. The application must be supported by records demonstrating the scope of the work actually performed. The Bulletin concludes:
“vi. BINDING DETERMINATION
“Where, after completion of the work DHCR issues a final order determining that the building is exempt from rent regulation on the basis of substantial rehabilitation, that order will be a binding determination on a building-wide basis, notwithstanding occupancy by subsequent tenants. DHCR will not thereafter entertain challenges by subsequent tenants except upon showing that the determination was obtained as a result of fraud by the owner or the owner’s agent.”
We assume, without necessarily deciding, that DHCR is authorized to issue a building-wide order of exemption from rent stabilization, based on a finding of substantial rehabilitation, that will be binding on subsequent tenants. While we are aware of no statute that authorizes DHCR to issue such orders specifically in the case of substantial rehabilitation, we note that it appears from the general scheme of the rent regulatory statutes that the Legislature intended and assumed that DHCR would have the authority to issue orders of decontrol and of exemption as well as other types of orders that will bind successor tenants (see generally, Emergency Housing Rent Control Law [L 1946, ch 274, as amended] § 4 [4] [a] [McKinney’s Uncons Laws of NY § 8584 (4) (a)]; Matter of Vivana Realty Corp. v Abrams, 5 AD2d 466). Thus, for example, DHCR is authorized to issue orders of high-income rent decontrol (ETPA § 5-a [b] [i]; Rent Stabilization Law of 1969 [Administrative Code of City of NY] § 26-504.3 [b] [RSL]) and, under rent control, of decontrol based on substantial demolition (New York City Rent and Rehabilitation Law *435 [Administrative Code] § 26-403 [e] [2] [i] [6] [i]). It is also authorized to issue other types of orders, such as those for rent adjustments and increases {e.g., RSL § 26-511 [c] [6]; § 26-513), that are binding on subsequent tenants. The practical need for the existence of such authority in the case of substantial rehabilitation is evident if every subsequent tenant is not to be allowed to relitigate the substantial-rehabilitation issue.
However, defendants and their predecessors did not avail themselves of this DHCR procedure. Instead of applying to DHCR for an exemption order, Hickory Hill chose to commence holdover proceedings against all the tenants then residing in the building and to claim — but never establish by evidentiary proof — that there had been a substantial rehabilitation. Based on the uncontradicted evidence in the record, this claim can only be deemed to have been a sham. Hickory Hill thereafter, in essence, paid the tenants to drop their claims to rent stabilization protection. The so-ordered stipulation thus obtained is not binding on subsequent tenants, who are not in privity with the parties to the stipulation (Matter of Juan C. v Cortines, 89 NY2d 659, 667; Gramatan Home Investors Corp. v Lopez, 46 NY2d 481, 486; Downey v Seib, 185 NY 427), and who, in any event, cannot be collaterally estopped from claiming the protection of rent stabilization on the basis of a determination that was not “actually litigated” (Kaufman v Eli Lilly & Co., 65 NY2d 449, 456; see, Singleton Mgt. v Compere, 243 AD2d 213, 217; 1829 Caton Realty v Caton BMT Assocs., 225 AD2d 599; Urban Assocs. v Hettinger, 177 AD2d 439).
We note that in support of its claim that the Civil Court stipulation is binding on plaintiff, defendants rely on one of the recently promulgated amendments to the Rent Stabilization Code (9 NYCRR 2520.13, as amended [RSC]), which provides that under certain circumstances a negotiated settlement withdrawing a DHCR tenant complaint will be binding on subsequent tenants. By its terms, this provision is not applicable to the instant situation. In any event, it would contravene the requirements of due process to hold that the tenants herein are bound by the Civil Court stipulation when they were neither parties to the stipulation nor in privity with the parties (Parklane Hosiery Co. v Shore, 439 US 322, 327, n 7 [“It is a violation of due process for a judgment to be binding on a litigant who was not a party nor a privy and therefore has never had an opportunity to be heard”]; Postal Tel. Cable Co. v City of Newport, 247 US 464). In contrast, a legislatively authorized DHCR building-wide order of decontrol based on substantial *436 rehabilitation might well pass constitutional muster, for it is within the power of the legislative body creating a right to place substantive and procedural limitations on the right, so long as these comport with the requirements of due process (Arnett v Kennedy, 416 US 134; Keeler v Joy, 641 F2d 1044; Matter of Kovarsky v Housing & Dev. Admin., 31 NY2d 184, 193).
For similar reasons, the DHCR Huertas determination, which involved only the complaint of a single tenant (living in a different apartment), was not binding on other tenants. The determination was not a building-wide order of exemption and was not made on the basis of evidentiary proof of substantial rehabilitation. Thus, the determination cannot, consistent with the requirements of due process, bind the other tenants and their successors.
Plaintiffs cause of action, which seeks to recover the difference between the rents collected and the legal regulated rents (plus penalties) only during the four-year period, is not time barred. As this court explained in Myers v Frankel (184 Misc 2d 608, 612-614), under the terms of the statute, only those owners who are duly registered receive the benefit of a legal regulated rent that is based upon “the rent indicated in the annual registration statement filed four years prior to the most recent registration statement” (RSL § 26-516 [a]). For owners who fail to register, the legal regulated rent must and can only be calculated as it would ordinarily be calculated, i.e., based on the last properly registered rent (RSL § 26-512 [e]; § 26-517 [e]; see also, Chelsea Inn v Worthy, NYLJ, Jan. 17, 2001, at 27, col 4 [Civ Ct, NY County], relying on 319 W. L. L. C. v Baylor, NYLJ, Feb. 16, 2000, at 26, col 4 [App Term, 1st Dept]), and these owners must continue to maintain and produce rental records dating from before the four-year period (RSL § 26-516 [g]). The late filing of the registrations for the four years from 1996 to 1999 cannot operate to give defendants the benefit of a legal regulated rent that is based on “the rent indicated in the annual registration statement filed four years prior to the most recent registration statement” (RSL § 26-516 [a]).
We note that DHCR, in the recently promulgated amendments to the Rent Stabilization Code, has changed the code’s definition of the term “legal regulated rent” in an attempt to bring the code into compliance with the requirements of RSL § 26-516, as amended by the 1997 Rent Regulation Reform Act (L 1997, ch 116). The amended code defines “legal regulated rent” as the “rent charged on the base date set forth in subdivi *437 sion (f) of this section, plus any subsequent lawful increases and adjustments” (RSC § 2520.6 [e]) and defines the “base date,” as here applicable, as the “date four years prior to the date of the filing of [the] * * * complaint” (RSC § 2520.6 [f]).
The amended code definition is completely inconsistent with the definition of “legal regulated rent” which the Legislature has provided in the Rent Stabilization Law. This law provides, in section 26-516 (a), that the “legal regulated rent for purposes of determining an overcharge, shall be the rent indicated in the annual registration statement filed four years prior to the most recent registration statement * * * plus in each case any subsequent lawful increases and adjustments” (RSL § 26-516 [a]). As stated above, this provision gives owners who are duly registered the benefit of a legal regulated rent that is based on the rent registered four years prior to the most recent registration (see also, Bragston Realty Corp. v Dixon, 180 Misc 2d 1018). Unlike the code’s amended definition, the Rent Stabilization Law does not give duly registered owners the benefit of a legal regulated rent that is based on what the owners were charging four years before the filing of the complaint. Moreover, it is certain that the Legislature did not intend to give owners who are not duly registered benefits that are greater than or even equal to those that it gave to duly registered owners. Yet the amended code, by giving nonregistered owners (as well as registered owners) the benefit of a legal regulated rent that is based on the rent charged four years prior to the filing of the complaint, would have the effect of giving such owners a benefit greater than that expressly granted by the statute to duly registered owners.
From the time that the rent registration requirement was introduced into the Rent Stabilization Law by the Omnibus Housing Act of 1983 (L 1983, ch 403), it has been a cardinal rule of rent stabilization that the legal regulated rent must be based on the registered rent, not on the charged rent (RSL § 26-512 [e]; Murray v Morrison, 181 Misc 2d 209, 212). Thus, RSL § 26-512 (e) provides: *438 In RSL § 26-516 (a), the Legislature has set forth a definition of legal regulated rent for the purposes of determining an overcharge which, because it is based on a registered rent, is consistent with its registration scheme. In contrast, the drafters of the amended code, in framing a definition of legal regulated rent that is based on the charged rent, have clearly departed from this statutory scheme.
*437 “e. Notwithstanding any contrary provisions of this law, on and after July first, nineteen hundred eighty-four, the legal regulated rent authorized for a housing accommodation subject to the provisions of this law shall be the rent registered pursuant to section 26-517 of this chapter subject to any modification imposed pursuant to this law” (emphasis added).
*438 “An administrative agency cannot by regulatory fiat directly or indirectly countermand a statute enacted by the Legislature” (Servomation Corp. v State Tax Commn., 51 NY2d 608, 612). A code provision that is in such disharmony with the statute that it is designed to implement cannot be followed (Heights Assocs. v Bautista, 178 Misc 2d 669, 673). For the reasons set forth above, we continue to hold that the legal regulated rent for owners of units that are not duly registered must be calculated based on the last properly registered rent (RSL § 26-512 [e]; § 26-517 [e]; Myers v Frankel, supra).
Because the Civil Court did not pass on the issue of damages, the matter must be remanded for a determination of that issue as well as for a trial on the issue of willfulness (11 Jones St. v Orbach, NYLJ, May 3, 1996, at 29, col 2 [App Term, 1st Dept]). Nothing in this court’s order shall be deemed to preclude defendants from late registering the premises for the years commencing in 1985 (see, RSL § 26-517 [e]).
Scholnick, P. J., Patterson and Golia, JJ.