*182 OPINION OF THE COURT
Susan T. Kluewer, J.
Decision After Trial On Stipulated Facts
As I noted in my interim order dated September 18, 2001, the dispositive facts underlying this holdover summary proceeding are not in dispute. In September 2000, respondent leased from petitioner apartment 12C, a rent-stabilized apartment located in Freeport, Nassau County, New York. She harbored a dog in violation of the terms and conditions of her written lease, and continued to do so notwithstanding service of a notice to cure. Moreover, possession of the leased premises — entitlement to which petitioner demonstrated prior to issuance of the interim order — is no longer disputed, respondent having vacated them on an unspecified date in mid-August 2001, after this case was first submitted but before issuance of my interim order.
Pursuant to my interim order, the entirety of the underlying lease is now in evidence, and the petition is deemed amended so as to include prayers for use and occupancy totaling $950 per month for the months of June 2001 through August 2001 for the apartment and for garage space. Respondent concedes liability of $950 for use and occupancy for each of June and July 2001, but urges that, because she vacated the apartment before the end of the month, she is not liable for use and occupancy for August 2001. The heart of the controversy, however, is whether, as a matter of law, petitioner is precluded from collecting late fees and attorneys’ fees, even though each— characterized in the parties’ agreement as “added” or “additional” rent — is authorized by the governing lease.
As she did when this matter was first submitted, respondent asserts that, in order to recover the disputed fees, petitioner must prove that there was a lease in effect allowing for those fees — regardless of who the tenant was — when the apartment first became subject to the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4, as amended [McKinney’s Uncons Laws of NY § 8621 et seq.]) some 20 years ago. When she previously advanced the argument, however, respondent relied on 9 NYCRR 2522.5 (g), and East Eleventh St. Assocs. v Breslow (256 AD2d 110 [1st Dept 1998]), both of which concern rent stabilization within New York City (see Finkelstein and Ferrara, Landlord and Tenant Practice in New York 11.42, at 11-22 [1999]), and both of which in any event concern the requirement that a renewal lease made with the same tenant, except for a legally authorized increase in rent, be on the same *183 terms and conditions as the prior, expired lease with that tenant. This case of course arises in Nassau County and concerns a first-time, or vacancy lease between petitioner and respondent (see 9 NYCRR 2502.5 [a]; cf. 9 NYCRR 2522.5 [a], [b], [g]). Following oral argument pursuant to my interim order and the parties’ subsequent submission of additional memoranda, respondent apparently now relies exclusively on paragraph (7) of subdivision (c) of 9 NYCRR 2502.5, the section governing “Lease agreements” under rent stabilization as it applies outside New York City (see 9 NYCRR 2502.1 et seq.; see also Finkelstein and Ferrara, Landlord and Tenant Practice in New York, supra). As noted, she continues to press her argument that the challenged fee provisions in her lease with petitioner also had to be in a lease to apartment 12C that was in existence at the time the premises first became subject to rent regulation. The pertinent part of paragraph (7) of subdivision (c) of section 2502.5 — the subdivision with the heading “Limitations” — provides:
“(7) Same Terms and Conditions
“(i) The lease provided to the tenant by the owner pursuant to both paragraphs (1) and (2) of this subdivision shall be on the same terms and conditions as the last lease prior to the local effective date [of the act], except where a change is required or authorized by a law applicable to the building or to leases for housing accommodations subject to the act. Where there was no prior lease for the housing accommodations, the lease shall be on the same terms and conditions as the last leases for the other housing accommodations in the building subject to the act, and shall otherwise provide for the maintenance by the owner for all services and facilities required by the laws applicable to the building and housing accommodations.”
Petitioner originally accepted outright so much of respondent’s arguments as asserted that a landlord must prove that late- and attorneys’-fees provisions were included in a prior lease with another tenant, but qualified the argument by asserting that it need produce a lease no earlier than one made four years before the present lease (cf. 9 NYCRR 2503.1 et seq.). It, too, has now refined its arguments. It urges that 9 NYCRR 2502.5 (c) (7), construed in context, was intended as a protection for tenants during the “window period” between the effective date of the Emergency Tenant Protection Act and the actual establishment of the legal regulated rent, and that, *184 therefore, the limitation has no application to the vacancy-lease, made years later, which is at issue here. Only as an alternative does petitioner continue to press its tacit argument that attorneys’ fees and late fees constitute “rent” within the meaning of the Rent Stabilization Law and that, therefore, the four-year statute of limitations and four-year record-keeping requirements pertaining to proceedings to recover rent overcharges (see 9 NYCRR 2503.1 et seq.) excuse it from producing a lease that was made more than four years earlier. In that regard, petitioner points to a previously submitted form lease concerning apartment 12C which contains late-fee and attorneys’-fee provisions, a lease made between Arthur Mott as landlord and Yohsoke Ohishi as tenant for the period July 1, 1993 to June 30, 1994 at a monthly rental of $715. It produced no lease for any of the years between the end of the “Ohishi” lease and the making of the lease with respondent.
I agree with petitioner that the portion of 9 NYCRR 2502.5 on which respondent’s argument now turns is inapplicable to a vacancy lease made years after rent regulation took effect for apartment 12C. Indeed, that portion — paragraph (7) (i) of subdivision (c) — cannot be understood without also looking at paragraphs (1) and (2) of subdivision (c) to which paragraph (7) (i) refers. Nor can it be properly construed without also looking both at the other subdivisions of section 2502.5 (see McKinney’s Cons Laws of NY, Book 1, Statutes §§ 3, 97), and at the purpose behind the Rent Stabilization Law (see McKinney’s Statutes §§ 3, 95).
Rent stabilization was enacted to prevent speculative, unwarranted, abnormal, unjust, unreasonable and oppressive increases in rent — that is, such increases in the periodic compensation paid by a tenant to the owner or landlord in return for the use of .the premises (see 1 Dolan, Rasch’s Landlord and Tenant — Summary Proceedings § 12:1 [4th ed 1998]) — during periods of housing shortages (see McKinney’s Uncons Laws § 8622). But although rent and some other matters are regulated by statute and rule, the landlord-tenant relationship emanating from a lease to rent-stabilized premises nonetheless remains essentially one governed by contract (see Matter of Duell v Condon, 84 NY2d 773 [1995]). As with any other contract, attorneys’ fee and late-fee provisions can, absent any prohibition imposed by the regulatory scheme, be among the terms of a lease to rent-stabilized premises (see Cier Indus. Co. v Hessen, 136 AD2d 145 [1st Dept 1988]; cf. East Eleventh St. Assocs. v Breslow, supra; see also Real Property Law § 234). And, to the extent that any statute or rule is *185 imposed, to limit the common-law right to enter into an agreement regarding payment of attorneys’ fees or late fees, that statute or rule is to be strictly construed (see McKinney’s Statutes §§ 3, 301 [a]).
Turning to the portion of the regulatory scheme on which respondent focuses, it is true that paragraph (1) of subdivision (c) does contain mention of both vacancy leases and renewal leases, but the clause pertinent to vacancy leases addresses permissible rent adjustments only in those vacancy leases that were executed prior to the issuance of “an applicable Rent Guidelines Board Order” (see 9 NYCRR 2502.5 [c] [1] [ii]). Paragraph (2) contains no reference to vacancy leases whatsoever. Interestingly, subdivision (a) of 9 NYCRR 2502.5, which addresses the rental of a vacant housing accommodation “after the local effective date of the act,” requires that vacancy leases be at a rent not exceeding the legal regulated rent, and that those vacancy leases be for one- or two-year terms at the tenant’s option. This all-encompassing subdivision concerning vacancy leases that are entered into after the effective date of the Emergency Tenant Protection Act contains no mention of rents that were in existence at the time rent regulation was first imposed, just as it contains no requirement that vacancy leases be on the same terms and conditions as those of any prior lease, let alone one that was made years earlier with a totally different tenant.
Had the Division of Housing and Community Renewal, the entity charged with the duty of administering the statute and promulgating regulations, intended that a general category of vacancy lease be on the same terms and conditions as those of any earlier lease, it could, as it did with renewal leases located within New York City (see 9 NYCRR 2522.5 [b], [g]), plainly have done so by including such a generally applicable same-terms-and-conditions limitation in subdivision (a) of 9 NYCRR 2502.5. Instead, it imposed a circumspect limitation by indirect reference to other paragraphs within a subdivision of the regulation. Insofar as vacancy leases are concerned, that circumspect limitation applies only to vacancy leases that are executed before a rent guideline order has been issued, i.e., before the particulars of legally regulated rent are fixed. Since the vacancy lease at issue here does not fall within any category mentioned in paragraphs (1) or (2) of subdivision (c), paragraph (7) (i) of subdivision (c), which refers to those paragraphs, and on which respondent bases her argument, simply does not apply.
*186 That this is so is borne out not only by the strictly construed language of the regulation, but also by the fact, which respondent in her last memorandum tacitly conceded, that attorneys’ fees and late fees, regardless of how they are characterized in the lease, are to be paid only in certain circumstances and thus are not the “rent” that the Emergency Tenant Protection Act was intended to stabilize (cf. McKinney’s Uncons Laws § 8622; see also Rasch’s Landlord and Tenant, supra). Moreover, while the purpose behind a requirement that a renewal lease be on the same terms and conditions as the immediately preceding lease with the same tenant is evident (see 9 NYCRR 2502.5 [c] [7] [1] [i]; [2]; cf. 9 NYCRR 2522.5 [b], [g]; and see Matter of David v New York City Conciliation & Appeals Bd., 59 NY2d 714 [1983]; East Eleventh St. Assocs. v Breslow, supra), there is no apparent rationale furthering the purposes of rent stabilization, and respondent offers none, for requiring, without regard to what terms and conditions existed in any intervening lease (cf. Myers v Frankel, 184 Misc 2d 608 [App Term, 2d Dept 2000]), that a landlord produce a decades-old lease with another tenant in order to recover from the current tenant, e.g., attorneys’ fees awardable pursuant to the current lease. Indeed, if respondent’s proposed interpretation of 9 NYCRR 2502.5 (c) (7) were correct, petitioner would not only be required to demonstrate the existence of the challenged fee provisions in a lease dating back decades, it would have to do the same for the term and condition giving rise to this proceeding, i.e., that no dogs are allowed in the apartment. Not even respondent makes this claim.
In light of my determination that 9 NYCRR 2502.5 (c) (7) has no application here, I do not reach petitioner’s alternate argument that all.it need produce is a lease made at least four years earlier than the lease underlying this proceeding. As for respondent’s assertion that she is not liable for use and occupancy for August 2001 because she vacated the premises at some point during that month, her claim is without merit. The terms of the lease, controlling in this holdover proceeding (see Rasch’s Landlord and Tenant, supra, § 10:2), require that rent be paid in advance, on the first of the month. Since respondent indisputably occupied the premises for a portion of the month of August 2001, she was obligated to have paid use and occupancy on August 1, 2001. She did not do so and is thus liable for use and occupancy as sought by petitioner. With respect to late fees, although these fees are properly the subject of a contractual agreement, petitioner has failed to address, let *187 alone explain, conflicting “late fee” provisions which provide for different amounts and for different dates upon which a rent payment becomes “late.” Because petitioner has failed to prove, among other things, what amount is due for late fees, no amount is awarded therefor. Petitioner has, however, already established the reasonableness — unchallenged by respondent — of the attorneys’ fees it seeks. For the reasons noted above, respondent is liable to petitioner for those fees under the lease, which provides for an award of attorneys’ fees to the prevailing party.